**Clyde M. BASSETT, Appellant,**

v.

**NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY, a corporation (two cases).**

**Nos. 11850, 11851.**

United States Court of Appeals
Third Circuit.

Argued June 19, 1956.

Decided July 16, 1956.

James P. McArdle, Pittsburgh, Pa. (James E. McLaughlin, Regis C. Nairn, Pittsburgh, Pa., on the brief), for Clyde M. Bassett.

Frank B. Quinn, Erie, Pa. (Quinn, Leemhuis, Plate & Dwyer, Erie, Pa., on the brief), for New York, Chicago & St. Louis R. R. Co.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and VAN DUSEN, District Judge.

GOODRICH, Circuit Judge.

These two appeals arise out of the same accident. The plaintiff recovered a judgment in the trial court on a claim under the Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51, for injuries sustained while in the defendant's service. The jury returned a verdict for him, deducting a quarter of the amount of what it found to be the damage suffered because of the plaintiff's contributory negligence.

We shall discuss the defendant's appeal first. The defendant says that there is no basis for a finding that it was negligent. We disagree. The plaintiff's job was that of district lineman on a portion of the defendant's track extending from Brewster to Toledo, Ohio. His work was to install, maintain and repair communication lines, pole equipment and the like. For this use he went up and down the line on a small motor "hand car." On the day of the accident in question the plaintiff was hurt when his car was derailed as he ran into two obstructions on the track along which he was riding while engaged upon the defendant's business. The negligence of the defendant, it is charged, comes in the fact that another railroad employee had reported flying missiles in the vicinity of his train and a railroad detective and deputy sheriff, being notified, had gone out to investigate. This report was made to the witness Horn. Horn was a train dispatcher whose duties were to "control the movements of the trains * * * on the division where I work. And issue track car lineups for the information and use of the motor car operators." These track car line-ups tell the position of the various trains on the tracks of the defendant in the area concerned. Horn was in touch

with the plaintiff on this day on five or six occasions. Horn did not tell Bassett anything about the reported missiles, obstructions or other unusual occurrences which had been reported to him by the train crew.

There is adequate basis for a finding of negligence because of the failure on the part of Horn to warn the plaintiff of danger. He may not have been called a "superior officer" in the railroad hierarchy. In fact, the plaintiff, Bassett, testified that he pretty much set out his own course on each day's work for himself. Nevertheless, here was a fellow employee charged with giving Bassett train information who had notice of danger and said nothing. We think this is a case where the defendant through its employee Horn had a duty of affirmative action to give warning of danger known to Horn and not to Bassett.

A master has certain "non-delegable" duties which he owes to his servants. Although he may employ others to perform them for him, he is legally responsible if the one to whom he delegates the duties acts improperly with respect to them. One of these duties concerns the action a master must take when he knows or has reason to know about a condition which makes it dangerous for his servants to do their jobs. If the condition is such that servants exercising due care may not discover it, the master has a duty to warn them. Restatement, Agency § 492, comment g (1933); Prosser, Torts § 67, p. 509 (1941).

We think this duty was violated here. The relationship between the defendant and Bassett was that of master and servant. See Restatement, Agency § 2 (1933). The defendant is responsible for knowledge of the dangerous condition since notice of it came to Horn and one of his job responsibilities was to give information to fellow servants about the situation on the tracks. See Restatement, Agency § 496 (1933). The brakeman who first saw the obstructions reported them to Horn as he had been instructed to do. Horn sent out a message to warn a train which was soon to pass

through the dangerous area. Horn himself testified in response to a hypothetical question that he would have told Bassett about the obstructions if Bassett had called from the immediate vicinity of the danger. Where Bassett was when he made his last contact with Horn is not clear. But Horn should have realized from the series of calls that Bassett was proceeding toward the scene of the accident and might reasonably be expected not to discover the hazard. Bassett's job required him to take his eyes off the tracks and the obstructions were relatively small. In our view, the plaintiff's version of the facts presents a case where a master had both a duty and an opportunity to act and failed to do so. See Michael v. Reading Co., D.C.E.D.Pa.1948, 82 F.Supp. 54, affirmed per curiam, 3 Cir., 1949, 174 F.2d 828. Cf. Restatement, Agency §§ 354, 359, 361 (1933); Seavey, Studies in Agency 342, 356 (1949). The jury having accepted that version, its verdict is correct.

The defendant invites us to a discussion of proximate cause. But granted the existence of the duty to warn and its violation, the injury to the plaintiff follows without any break at all. The jury found that he, too, was careless but made allowance for that in the verdict which it rendered.

### Plaintiff's Appeal.

■ At the trial there was very strong testimony as to the extent of the plaintiff's injuries. One physician, Dr. William S. McCabe, Jr., a Neuropsychiatrist from Pittsburgh, testified that the plaintiff was suffering from traumatic epilepsy and that the disease was progressive and could not be cured by surgery. There was other medical testimony for the plaintiff also but Dr. McCabe's diagnosis and prognosis were the most striking. In view of this testimony, the size of the verdict for the plaintiff was very moderate.

After the accident but before the trial the plaintiff had been working for the defendant railroad. There was testimony that he had to have help. His wife went with him on his trips and assisted him in parts of his work that he was unable to do because of his injuries. But after the recovery of this judgment for the plaintiff, the railroad dismissed him in a notice which contained a paragraph as follows:

"Your personal testimony and that of witnesses in your behalf in your recent court action against this company was to the effect that you suffered from traumatic epilepsy, that as a result of your physical condition you had required your wife's assistance to perform work as a lineman for this company, and that you were unemployable in the open market. Under the circumstances, this company can no longer permit you to work on its property.

S. W. Miller."

The basis of the plaintiff's appeal is just a little vague. Fraud is suggested but plaintiff's counsel is unwilling to charge the physicians who appeared as witnesses for the defendant with being conscious liars. Needless to say, the fact that medical testimony between expert witnesses on the two sides presents conflicts is no basis for concluding that either side is presenting fraudulent testimony. Doctors, as well as lawyers, are privileged to disagree.

Nor can we see either fraud or bad motive in letting the plaintiff go after what his own medical expert had said about progressive traumatic epilepsy. This witness saw the plaintiff just before and during the trial and had not seen him prior to that time. No suggestion is made that he was not an expert and a person of standing in his field. If, as he said, the unfortunate plaintiff is a victim of epilepsy, the railroad would be leaving itself in a very dangerous position if it permitted him to be running a motor car up and down its tracks. Also the railroad cannot be criticized for going ahead with its defense at the trial in view of the fact that Dr. McCabe's opinion was not even formulated, much less made available to it, prior to the time of trial.

The judgments appealed from will be affirmed in both appeals.