Gurvan B. BROWN

v.

PENNSYLVANIA RAILROAD COMPANY, a corporation.

Civ. A. Nos. 14446, 14449.

United States District Court
W. D. Pennsylvania.

Jan. 5, 1960.

John M. Feeney, Jr., James P. Mc-Ardle, Pittsburgh, Pa., for plaintiff.

Samuel W. Pringle, Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

The plaintiff brought an F.E.L.A. action against the defendant Railroad at Civil Action No. 14446 claiming that he was injured due to the negligence of the Railroad on December 27, 1953 while he was employed as a conductor. Liability was denied by the Railroad; it also claimed plaintiff was contributorily negligent.

Plaintiff also brought an F.E.L.A. action against the defendant Railroad at Civil Action No. 14449 claiming that he was injured due to the negligence of the Railroad on January 7, 1956, while he was employed as a brakeman. Liability for this accident was admitted. There was no evidence that plaintiff was contributorily negligent.

These two actions were consolidated for trial and the parties agreed that the jury render one verdict.

Plaintiff was 62 years old at trial and was subject to compulsory retirement at 65. His life expectancy was 16 years.

As a result of the first accident, plaintiff sustained injuries to his leg and the right side of his lower back, with pain radiating down his right leg; he continued to have this pain, but only lost approximately one week's work on account of these injuries; he had no medical expenses; he received no medical treatment.

As a result of the second accident, plaintiff sustained two broken ribs, in-

juries to his neck and the left side of his lower back. He complained of pain in his chest, continuing pain in his back which radiated down his left leg, chronic headaches and insomnia. He returned to work on April 27, 1956 and was regularly employed by defendant as a trainman. After this accident, his chest was taped, he wore a cervical collar for 8 or 9 months, and wore a back brace up to trial. He testified he accepted a road job that paid less than a yard job to which he was entitled because of his seniority. He says he did this in order to get longer resting periods. However, he said he worked in the yard for three months following his return, and rather equivocally indicated that he could do all the work required of a trainman. But he also said lifting and climbing caused pain which he tried to avoid as much as possible and indicated a steady yard job would be too much for him.

There was a conflict about the effects of the accidents. The plaintiff contended he sustained a ruptured disc and was partially permanently disabled. Dr. Philip A. Faix, his principal medical witness, recommended a disc operation which, he says, if successful would relieve the pain and terminate the disability. Plaintiff refused to have the operation because of the hazards involved. This doctor testified plaintiff was unemployable in the labor market and that the chances were good that the disc condition would become acute and plaintiff would eventually seek an operation, from which a residual disability might very well result. The doctor also testified that plaintiff may be developing hernias possibly referable to the accident. He kept plaintiff under constant sedation containing codeine. He testified plaintiff had a weak foot.

The defendant contended that as of the time plaintiff returned to work in April, 1956, except for some aches and pains mostly resulting from age and non-traumatic causes, he had recovered from the injuries and was able to and did work as before the accidents, and that his earning power was not diminished by any injury he received in the accidents. In fact, the defendant demonstrated that plaintiff's wages from April, 1955 to trial exceeded those earned prior to the second accident.

Plaintiff's actual loss of wages amounted to $2,052. His actual and prospective medical expenses were less than $1,000.

The defendant's position at trial, based on the testimony of its medical witnesses and plaintiff's work record, was that he had recovered from his injuries and was fit for duty on April 27, 1956; that he had been examined several times by defendant's medical examiners, aided by X-rays, and was found to be normal; that such pains as he had were not disabling as was shown by his uninterrupted and satisfactory work since that date; that plaintiff suffered no loss of earning power.

The plaintiff's position was that he had not recovered but sustained considerable loss of earning power; that his disability might increase at any time in the future and he might be laid off; and, although somewhat improved, he had been working without interruption up to trial out of sheer grit and expected to continue to do so.

Dr. Faix was of the opinion that plaintiff should continue to work with his partial disability as long as he is willing to stand the pain.

Dr. Eugene F. Berkman, for the defendant, was of the opinion that plaintiff could continue to work because he had no disability, and his aches and pains were for the most part referable to congenital and non-traumatic causes which would decrease as time went on.

No one testified that plaintiff would be held out of service because of his complaints, and the court negatived any inference that defendant could take reprisals because plaintiff had brought the suits.

In argument to the jury, plaintiff's counsel in trying to obtain a substantial award for future loss of earning power for his working client, emphasized the probability of serious surgery with ensuing disability and loss of wages. He

stressed the prospect that plaintiff might be found disqualified because of his alleged disability and held out of service after the termination of the trial. He argued that plaintiff was unemployable if not working for the Railroad and that his wages could suddenly be cut off.[1]

Counsel for defendant argued that plaintiff had no disability as shown by defendant's medical testimony and plaintiff's uninterrupted and satisfactory work since April, 1956, and implied that his claim of pain and loss of earning power from the accidents were non-traumatic and grossly exaggerated; that his condition was in no way disabling, and any pain resulting from his arthritis or otherwise, by nature's processes will decrease.[2]

The jury had difficult questions to resolve consisting of diminishing damages because of alleged contributory negligence, minimizing damages because of plaintiff's refusal to accept a recommended curative but hazardous operation, and loss of future earning power with respect to a 62 year old man who apparently was adequately performing his work for the Railroad and earning top trainman wages.

A verdict was returned for plaintiff in the sum of $15,000 upon which judgment was entered. Since plaintiff's medical expenses and loss of wages amounted to about $3,000, the balance is referable to loss of earning power, pain, suffering and inconvenience. It is impossible to estimate how much, if any, the total damages were diminished because of contributory negligence and the duty to minimize damages. Neither party asked for a new trial pursuant to Rule 59, Fed.R.Civ.P. 28 U.S.C. The plaintiff did not take exceptions to anything that the court said to the jury.

On June 4, 1959, plaintiff moved for a new trial limited to the issue of damages pursuant to Rule 60(b) (3), Fed.R.Civ.P. It was averred in the mo-

tion, inter alia, that several weeks after the trial, plaintiff was notified by Dr. Woodward, defendant's Regional Medical Officer, that he was to be held out of service as a result of the trial testimony of plaintiff and his medical witnesses. Dr. Woodward did not give plaintiff a physical examination nor was he examined by any other medical examiner for defendant. On May 29, 1959, plaintiff was notified by the defendant that he was being held out of service due to his physical disability to perform all the duties of a trainman.[3]

At the hearing plaintiff submitted the deposition of Dr. Woodward in support of his motion. In general it substantiates the factual averments mentioned in the preceding paragraph. These facts are not disputed. It is not disputed that Dr. Woodward advised defendant that plaintiff was not qualified to perform the duties of a trainman. There is no evidence of vindictiveness on the part of any of defendant's representatives including Dr. Woodward. The latter is charged with responsibility for making decisions concerning the fitness of employees to continue working for defendant in this region.

In the motion plaintiff contends that defendant's position at the trial "is in complete contradiction with the position it has taken since the trial of this case and amounts to a fraud and misrepresentation, the purpose of which was to substantially reduce the verdict to which plaintiff was entitled and the action taken by it since the trial caused plaintiff financial harm as a result of his having exercised his rights under the Federal Employer's (sic) Liability Acts and as a result thereof, plaintiff has been deprived of a fair trial on the issue of damages. * * * "

In the light of the conflicting evidence and opposing contentions of the parties, I am unable to perceive any fraud or misrepresentation on the part of the defend-

---

1. T., pp. 466, 467, 475, 476, 478.

2. T., pp. 432, 433–437, 439–446.

3. This means plaintiff is still an employee of defendant with seniority and pension rights no way affected.

ant Railroad. The defendant, who urged at trial that plaintiff sustained no disabling injuries from the accidents and was not disabled from natural causes in performing his work, is simply accepting the word of Dr. Faix and the plaintiff that he is working under a severe handicap, and concluding therefrom that further employment would be dangerous to both the plaintiff and fellow employees. It believes continued employment as a trainman would be dangerous because plaintiff constantly takes phenaphen with codeine, is likely to suffer acute pain while at work necessitating a major surgical operation with possible aggravated disability, has a weak foot, cannot perform the normal functions of a trainman, is developing hernias, and is unemployable.

In view of prior F.E.L.A. litigation, it may be supine negligence on the part of the Railroad, now on notice of plaintiff's precarious physical condition, whereas before trial it honestly believed that he was physically qualified to work, to continue to employ him as a trainman. Certainly it would run a risk of future litigation and liability for additional damages.[4] I can only conclude that in accepting plaintiff's sworn medical testimony, Dr. Woodward was warranted in advising defendant that plaintiff was medically unqualified to perform the duties of a trainman.

There is no evidence to show that any of defendant's representatives knew before trial or at trial that plaintiff would be held out of service after the trial. I presume the defendant's representatives sanguinely expected that the jury would bring in a much smaller verdict than it did, thus negativing any disability and loss of earning power.

In order to limit the award, defendant certainly held out to the jury that plaintiff was assured of his job because since April, 1956, he had been working without any disability whatever and was able to continue; and plaintiff just as surely emphasized to the jury that plaintiff's future was most uncertain because of a serious back injury, suggesting that he would in due course be held out of service by surgery or otherwise, thus striving to increase the award for loss of future earning capacity.

There is no evidence that Dr. Woodward or any of defendant's representatives knew prior to trial the details of the testimony of plaintiff and Dr. Faix;[5] and even if it could be said that they should have expected the worst, no doubt they hoped, sincerely enough, to establish the contrary. I find that defendant honestly disputed plaintiff's medical contentions and hence was not bound to act upon them prior to verdict.

■ Fraud and misrepresentation must be established by "clear and convincing evidence" in order to obtain relief under Rule 60(b) (3). Atchison, Topeka and Santa Fe Railway Co. v. Barrett, 9 Cir., 1957, 246 F.2d 846, 849.

I think what was said by Judge Goodrich in Bassett v. New York, Chicago & St. Louis Railroad Co., 3 Cir., 1956, 235 F.2d 900, 902, is dispositive of the charge of "fraud and misrepresentation" on the part of the Railroad in holding plaintiff out of service after what his own doctor said about his physical condition, namely, that he was unemployable. See also, Berkheimer v. P. R. R., D.C.W.D.Pa.1959, —— F.Supp. ——.

In my judgment plaintiff has failed to establish facts of fraud and misrepresentation warranting a new trial under Rule 60(b) (3).

■ In his brief, plaintiff argues pursuant to Rule 60(b) (2) that he is entitled to relief from the judgment and a new trial on the ground of newly discovered evidence which by due diligence

---

4. Dunn v. Conemaugh & Black Lick Railroad, 3 Cir., 1959, 267 F.2d 571; Nuttall v. Reading Co., 3 Cir., 1956, 235 F.2d 546.

5. In his deposition, Dr. Woodward stated

he was surprised by the testimony of plaintiff and his principal medical witness. See medical reports attached to plaintiff's pretrial statement.

could not have been discovered in time to move for a new trial under Rule 59.

It is true plaintiff could not know for sure during trial or ten days thereafter that he would be held out of service on the basis of his own evidence given at the trial, but as pointed out above, argument was made, in order to enhance the damages, that this very contingency might very well happen. The jury had it to consider.

In the great majority of personal injury cases involving partial disability, there can be no certainty that plaintiff, if working, will not lose his job some time in the future, or, if not working, will be able to find and hold a full time job. Also in some cases the disability disappears after verdict; in others it intensifies; simply because the change, unforeseen at trial, happens within a couple of months thereafter poses no different problem than if the change happened several years later. The issue on loss of earning power was litigated, submitted to the jury and resolved by that body. Public policy dictates that litigation must come to an end especially concerning a litigated issue of much speculation such as loss of future earning capacity.

More to the point, however, the decision of Dr. Woodward that plaintiff was medically disqualified for the duties of a trainman, reached after evaluating the testimony of plaintiff and his medical witnesses, is a fact that was not in existence nor could it have been known to defendant's representatives at trial, and, therefore, in my judgment does not qualify as newly discovered evidence justifying relief from the judgment.

An appropriate order will be entered.

### Order of Court.

And Now, to wit, this 4th day of January, 1960, It Is Ordered, Adjudged and Decreed that the motion of plaintiff for relief from the operation of the final judgment by a new trial limited to the issue of damages be and it hereby is denied.