James **TILLERY**

v.

**SOUTHERN RAILWAY COMPANY.**

**Civ. A. No. 7175.**

United States District Court,
E. D. Tennessee, N. D.

Jan. 18, 1971.

Paul T. Gillenwater, Knoxville, Tenn., for plaintiff.

Clyde W. Key, Knoxville, Tenn., for defendant.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff James Tillery seeks damages from the Southern Railway Company, hereinafter sometimes called the Company, because of accidental injuries sustained August 7, 1942 while in the performance of his duties as an employee of the railway company. He claims that the company violated his rights under the Federal Employer's Liability Act.

The company has moved for a judgment dismissing the action upon the ground that there is no genuine issue as to a material fact and that the case should be dismissed because the action is barred by the three-year statute of limitations contained in the Federal Employer's Liability Act. 45 U.S.C. § 56.[1]

The complaint charges that on or about August 3 or 4, 1943, the company caused to be constructed a pit which was filled with hot, molten steel and that plaintiff while in the performance of his duties stepped into the hot, molten metal and as a result sustained permanent and painful injuries to his foot. Plaintiff was advised by the company's claims agent that his sole remedy was under the Workmen's Compensation Act of Tennessee. Plaintiff relied upon the representations of the claims agent and

1. It has been held that the limitation affects both the rights and remedies of the injured party. Fravel v. Pennsylvania R. Co., 104 F.Supp. 84 (D.C.Md., 1952).

# 10

accepted weekly benefits at the rate of $18.00 per week under the Tennessee Workmen's Compensation Law. That the representations were malicious and fraudulent. That plaintiff did not learn of his rights until October 13, 1970 when he consulted his attorney, Paul T. Gillenwater, about insurance coverage for operations which he had had on his injured foot. Plaintiff charges that the misrepresentations of the company's claims agent tolled the three-year limitations provision in the Act.

Plaintiff, in his discovery deposition, testified that he was sixty-five years old and a graduate of Knoxville High School. He went to work for defendant July 1, 1937 and joined the Boilermaker's Iron Shipbuilders & Helper's Union of America on October 18, 1939. In 1954, he became a member of Local 453. He was a crown boat man for the company and assisted in repair work on steel locomotives. He worked in the main on locomotives taken out of service. He was injured August 7, 1942 while working on a sand hose. He was treated by company doctors and his hospital bills were paid by the company. He discussed his injuries with the local chairman of the union who looked after the interests of the members of the union. At the time plaintiff was hurt he was helping some employees of the company to install a ventilating pipe in the roof of one of the buildings at Coster Shop. The company's claims agent told him he would be paid $18.00 per week for the loss of his toes. At the time of the injury, all the employees at Coster Shop were under the Workmen's Compensation Law. Plaintiff refused to accept his last check because the company wanted him to sign a release which he would not do because he felt there was a possibility of losing his leg. He was off from work nine months because of the injury. At the end of the nine months, he returned to work for the defendant at the same job he had before his injury and worked until 1952. In 1952, he transferred to the car department of the company where he worked for about ten months. He worked from 1943 until

1953 for the company without losing any time on account of his foot injury.

Norman Dugger was the Tennessee boss of his union. He discussed his injuries with Dugger and Dugger told him there was nothing he could do for him. He also discussed his claim against the company for injuries with Hovis, defendant's claims agent. He likewise discussed his claim with his attorney, Cecil Meek, in 1949, who advised him of his rights. Mr. Meek told him that he could do nothing for him. After he left the employment of the company, he was employed by the TVA at Johnsonville, Tennessee on a repair job and continued to work for TVA as a boilermaker at various places until May, 1970. He has had skin graft surgery on his injured foot for the last three years.

Although plaintiff stated that he did not know of his rights under the Federal Employer's Liability Act, he read in Knoxville newspapers from time to time about employees in the Coster Shop suing the Southern Railway Company and obtaining big judgments. He discussed with the local chairman of his union and a lawyer before 1949 his claim against the defendant.

R. Houston Hovis, in his affidavit, stated that he was in the employment of the company as a claims agent and was transferred to Knoxville in 1948. He continued as a claims agent in Knoxville until 1955 when he was promoted to district claim agent in charge of the Knoxville office, which job he held until 1965 when he was transferred to the Washington, D. C. claim office of the company. He is presently employed as a Hearing Examiner by the Government. The James Tillery file was assigned to him. The file contained a detailed report of how the accident occurred, including Tillery's statement, a copy of which was attached to affiant's affidavit; also the written legal opinion of J. A. Susong dated August 22, 1942, a copy of which was also attached to the affidavit. At that time, J. A. Susong was Division Counsel of Southern Railway Company in Tennessee and as such head of the company's legal department in

Tennessee. In the summer of 1949, Tillery came to him and asked him to reopen his claim, insisting that he was entitled to more money for his foot injury, one of his claims being at the time under his injury that he was entitled to the protection of the Federal Employer's Liability Act rather than the Tennessee Workmen's Compensation Act. He told Tillery that his file contained a written opinion of Mr. Susong, the Tennessee Division Counsel of the company, stating that due to the circumstances under which he sustained his injury, his rights were those afforded by the Tennessee Workmen's Compensation Law rather than the Federal Employer's Liability Act and he declined to reopen the claim or make any additional payment to him.

On August 5, 1949, Cecil Meek, an attorney of Knoxville, Tennessee, contacted him, advising that he represented Tillery. Meek insisted that the Federal Employer's Liability Act was applicable to Tillery's injuries. Affiant took the position that the Workmen's Compensation Law applied, but that regardless of which Act applied, Tillery's claim under either Act was barred by the statute of limitations and no additional payment to him would be made voluntarily.

On September 15, 1949, and again on October 4, 1949, he talked over the telephone with Leslie Bass, an attorney of Knoxville, who advised that Tillery had been in his office on September 12, 1949 seeking his advice as to his rights arising out of the 1942 injury. He discussed with Mr. Bass in considerable detail the facts and circumstances under which Tillery received his injury, advising him that it was the opinion and position of the company that the Tennessee Workmen's Compensation Law applied. Mr. Bass insisted that the Federal Employer's Liability Act applied. Affiant responded that the claim was barred by the statute of limitations regardless of which Act applied. In the conversation of October 4, 1949, Bass advised affiant that he had reached the conclusion that due to the lapse of time Tillery had no further claim against the company under either the Tennessee

Workmen's Compensation Law or the Federal Employer's Liability Act and that he would so advise Tillery. On the same date, October 4, 1949, Cecil Arthur, local chairman of Tillery's labor union, contacted affiant and urged that affiant make a settlement with Tillery under the Federal Employer's Liability Act for the 1942 injury, stating that Tillery had sought his assistance in obtaining such settlement. Affiant advised Arthur that no further voluntary payment would be made by the company to Tillery.

On October 31, 1949, Norman Dugger, who was general chairman of Tillery's labor union, wrote a letter to the chief claims agent of Southern Railway Company in Washington, D. C., stating that Tillery "has referred the case to me asking that something be done concerning his injury." Under date of November 14, 1949, the general claims attorney of Southern replied to Mr. Dugger, in part, as follows:

"The file in this case had long since been retired and it was necessary for me to obtain it from the warehouse in Alexandria. An examination of this file discloses that Mr. Tillery was injured on August 7, 1942, while employed as a boiler maker's helper at Coster, Tennessee; and that he accepted compensation under the Tennessee Workmen's Compensation Act, being paid a final award by them representing compensation for sixty-nine (69) weeks at $18.00 per week, or a total of $1,242.00. This, of course, ended any and all claims he had on account of his injury. Therefore, it would seem that the information you have that there was no settlement made in the case is erroneous."

The written statement of Mr. Tillery, attached as Exhibit "A" to the Hovis affidavit, explains the circumstances surrounding the accident. Copy of letter of Mr. J. A. Susong, dated August 22, 1942, filed Exhibit "B" to the Houston Hovis affidavit is addressed to H. G. Hedrick, General Attorney, Washington, D. C. Mr. Susong stated in the letter that he was of the opinion that the Til-

lery accident must be classified under the Tennessee Workmen's Compensation Act. As a factual basis for his conclusion, he pointed out that Tillery was employed in an erecting shop doing heavy repair work, commonly known as "dead work." He was never called upon to do "running repairs" or just light work. Most of the engines on which he worked were dismantled, the frame work being removed, and nothing but the barrel or boiler left.

Counsel for the company concedes that Mr. Susong's opinion was erroneous but he points out in his brief that until 1939, less than three years prior to Tillery's injuries, the Federal Employer's Liability Act would not have been applicable. Under the 1939 Amendment, Tillery was made subject to the Act. The Amendment provides that the Act shall apply to injuries to any employee of an interstate railway carrier whose duties "in any way, directly or closely and substantially, affect such commerce." Prior to the amendment, the Federal Employer's Liability Act did not apply unless at the moment of the injury both the employer and the employee were engaged in interstate commerce. We are advised that at the time Mr. Susong gave his opinion the Amendment had not been construed by any appellate court. Under these circumstances, it would be preposterous to attribute bad faith to the late Mr. Susong, who was recognized during his lifetime as being one of the leading attorneys of Tennessee. Parenthetically, it may be added that he was an attorney of impeccable character.

But if the opinion was erroneous and its contents represented to Tillery, and this is conceded by the company, the company would be estopped from relying upon the three-year statute of limitations as a bar to the action, unless Tillery obtained independent advice and acted upon such advice. Glus v. Brooklyn Eastern District, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770.

■ Misrepresentations need not be intentional in order to toll the limitation provision contained in the Federal Employer's Liability Act. Mumpower v. Southern Railway Company, 270 F.Supp. 318 (D.C.Va., 1967).

■ If the employee seeks and obtains independent advice concerning his claim and acts upon that advice, the company is not estopped to rely upon the limitation provision and such provision is not tolled from and after such independent advice is sought and acted upon. Aetna Life Ins. Co. v. Moyer, 113 F.2d 974, 981, 982 (C.A.3, 1940) ; Sontcvh v. Sharon Steel Corp., 73 F.Supp. 825, 826 (D.C.W.D.Pa., 1947).

■ In this case, plaintiff admits that he sought and obtained independent advice from his attorney, the late Cecil Meek, and his union representatives, Messrs. Dugger and Arthur. The Hovis affidavit shows that he obtained independent advice from the late attorney Leslie Bass, but he did not remember obtaining such advice. Hovis advised him in 1949 that voluntary payment would not be made to him either under the Tennessee Workmen's Compensation Act or the Federal Employer's Liability Act and in the same year advised Messrs. Dugger and Arthur that voluntary payment would not be made to Tillery under either Act.

Under these circumstances, the Court is of the opinion and finds that the statute of limitations started to run when Tillery ceased to rely upon the representations of the claims agent and attorney for the Southern Railway Company, which was in the year 1949 at the time he sought and obtained the independent advice of his own attorney, the late Cecil Meek. There is no material issue of fact and if the foregoing facts were developed by evidence in a trial on the merits, a motion for a directed verdict in defendant's behalf would be sustained.

It is therefore, ordered that the motion for summary judgment in behalf of the Southern Railway Company be, and same hereby is, sustained.