**Earle G. PAYNTER, Plaintiff,**

**v.**

**CHESAPEAKE AND OHIO RAILWAY, Defendant.**

**Civ. A. No. 71–C–6–C.**

United States District Court,
W. D. Virginia,
Charlottesville Division.
June 12, 1973.

154

Willard J. Moody, Moody, McMurran & Miller, Portsmouth, Va., for plaintiff.

A. R. Bowles, Bowles & Boyd, Richmond, Va., for defendant.

## RULING ON MOTION TO DISMISS

DALTON, Chief Judge.

This case comes before the court under the Federal Employers' Liability Act (FELA) (45 U.S.C.A. Chapter 2, §§ 51–60) and the Safety Appliance Acts (45 U.S.C.A. Chapter 1, §§ 1–16). The defendant, The Chesapeake and Ohio Railway Company (C&O), is a corporation engaged in operating a system of railroads within the jurisdiction of this court. When he was injured, plaintiff was engaged in working for the defendant in Clifton Forge, Virginia, and both parties were engaged in interstate commerce by rail, their duties thus being controlled by the provisions of the Federal Employers' Liability Act.

## FACTS

The record reveals the following basic facts: On March 19, 1968, the plaintiff

was employed as a yard conductor with C&O at Smith Creek Yard, Clifton Forge, Virginia. He was responsible for throwing switches and switching cars, and on March 19, while working, he noticed that someone had pulled a wrong switch and he grabbed and threw the switch in order to avoid a wreck. While throwing the switch he felt something pull in his back. Plaintiff alleges that he did not know at that time that he was injured and continued to work the balance of the day. The next morning, March 20, 1968, plaintiff testified in depositions that he could not straighten up and he reported to the trainmaster and was instructed by the trainmaster to report to the C&O Hospital in Clifton Forge. At the hospital he was examined by Dr. J. J. Charles, who took X-rays and sent him home. On the afternoon of March 21, 1968, plaintiff was called back to the hospital, where he remained until April 8 or 9, 1968, when he was sent back to his regular work of throwing switches and riding railroad cars. During plaintiff's time in the hospital, Dr. Charles requested that Dr. J. F. Kell, Jr., a neurosurgeon from Richmond, perform an examination and render an opinion regarding the injury sustained by plaintiff. Dr. Kell, on March 29, 1968, stated in plaintiff's medical records that the plaintiff had "compression of L–5 or S–1 nerve root on right secondary to a mild HNP." Dr. Kell recommended that plaintiff continued physiotherapy from March 22 to April 5, 1968.

Dr. M. C. Edmonds, a general surgeon at the C&O Hospital, testified in depositions that plaintiff was admitted to the hospital with a diagnosis of acute back strain and spondolysisthesis. Dr. Edmonds further tesified that on March 29, 1968, Dr. Kell had found in his examination a herniated nucleus pulposus and a compression of the nerve due to herniated material.

Plaintiff was examined by Dr. Charles Woodhouse, an orthopedic surgeon at the C&O Hospital, on April 8, 1968, after Dr. Woodhouse returned from a vacation, and Dr. Woodhouse said plaintiff's back was much improved and that he could return to work.

Upon his release from the hospital, plaintiff returned to his regular job although his back continued to bother him and his legs also started to bother him. He returned to Dr. Woodhouse on September 24, 1968, when he reported that his back was worse and that he had pain radiating to his knees. Dr. Woodhouse gave plaintiff a corset to wear and made a note on the question of surgery. Plaintiff wore the corset for six to eight months, during which time he continued to work, as he received no medical advice to the contrary, and his condition continued to deteriorate. Due to his continued regression he was advised to obtain the treatment of a chiropractic by the claims agent for C&O, Mr. Burkes. He saw Dr. Gilmore, a chiropractor, in White Sulphur Springs, West Virginia for five or six months. Plaintiff testified that his condition got worse from this treatment. During this time, plaintiff stated that another claims agent sought to have him sign a release but that he refused because his back was still bothering him.

The record indicates that it was customary for C&O to require periodic physical examinations of employees and that Dr. Walter Vermilya usually performed such examinations in the Clifton Forge area. Pursuant to a regular physical examination required by C&O, plaintiff was seen by Dr. Vermilya on January 21, 1970 and September 18, 1970, at the request of C&O. Dr. Vermilya testified that C&O had not advised him of the condition of plaintiff or of the past history of plaintiff's back injury. Dr. Vermilya further testified that he was unaware of plaintiff's previous hospitalization for back problems. He further testified that he returned plaintiff to his work as a yard conductor after each examination and that he did

not know what type of duties a yard conductor carried out. Dr. Vermilya stated that when he examined plaintiff, he did not know of his past diagnosis and treatment and C&O did not furnish him with such history. Further, Dr. Vermilya stated that he did not make any X-ray examination of plaintiff's back and that he would not make such examinations in connection with a physical examination unless C&O told him to do so.

Plaintiff was examined by Dr. Gerald Weitzman, an orthopedic specialist, on September 13, 1972. Dr. Weitzman stated that he observed arthritis near the ruptured disc and that if regular X-rays had been made in connection with the C&O physical examinations, they would have shown the arthritis developing. Dr. Weitzman further testified that such arthritis was significant in the aggravation of plaintiff's condition. Dr. Weitzman further testified that he would have required X-rays prior to returning plaintiff to his work and periodic X-rays should have been made because of the slippage which was shown on previous X-rays. Dr. Weitzman further testified that he would not have recommended chiropractic treatment for plaintiff as such treatment would either not change his condition or would make it worse. Dr. Weitzman also stated that plaintiff should not have been returned to his work as conductor-brakeman in April 1968.

Plaintiff's condition continued to worsen and he was not able to continue to work after February 5, 1971. Plaintiff alleges that he has been unable to work since February 5, 1971 and is still unable to work.

On October 1, 1971, plaintiff was operated on at the C&O Hospital in Huntington, West Virginia, for a ruptured disc. Dr. Weitzman testified that this operation consisted of decompressing the L-3-4 inter space and taking out a herniated nucleus pulposus which was a disc. Dr. Weitzman testified that based upon the history given, the records of plaintiff and his examination, plaintiff sustained a trauma on March 19, 1968, which symptoms became aggravated, and that plaintiff had a twenty per cent disability and was not fit for his previous occupation as a conductor-brakeman.

Plaintiff filed his original complaint with this court on March 22, 1971. An amended complaint was filed by leave of court on July 24, 1972. In his complaint, plaintiff alleges negligence by defendant and its physicians, which resulted in serious and permanent injuries. He alleges that defendant failed to comply with FELA and the Safety Appliance Act and that he suffered pain and mental anguish. Plaintiff seeks trial by jury and $250,000 in damages.

Defendant filed an answer and motion to dismiss on November 15, 1972. The answer takes the form of a general denial of any negligence and wrongdoing, and defendant seeks dismissal of the action because the claim arose more than three years prior to the filing of the amended complaint and therefore is barred by 45 U.S.C.A. § 56. The court will now consider whether the complaint is barred by the statute of limitations.

*Ruling On Motion To Dismiss*

Plaintiff was injured on March 19, 1968. Plaintiff filed his suit on March 22, 1971. The time limit allowed under FELA is three years as required by 45 U.S.C.A. § 56. Rule 6 of the Federal Rules of Civil Procedure provides as follows:

In computing any period of time prescribed or allowed by these rules, by local rules of any district court, by order of court, or by any applicable statute, *the day of the act, event, or default from which the designated period of time begins to run shall not be*

*counted. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day, which is not a Saturday, a Sunday, or a legal holiday.* (Emphasis added)

Under Rule 6, the designated period of time did not begin to run until the date following the accident, March 20, 1968. Three years from that date, March 20, 1971 fell on a Saturday, and the following day was Sunday. Therefore, the court finds that plaintiff's suit, filed on Monday, March 22, 1971, falls within the statutory three-year period.

█ It has been held that Rule 6 of the Federal Rules of Civil Procedure is applicable to pleadings and statutes of limitations and that in computing time the first day should be excluded and the last day included. Miller v. Daybrook-Ottawa Corp., 291 F.Supp. 896 (D.C. 1968).

In Rutledge v. Sinclair Refining Co., 13 F.R.D. 477 (S.D.N.Y.1953), the court said at 478 that "the basic issue is whether Rule 6(a) is applicable to a Federal statute of limitation when the last day of the period prescribed by it falls on a Sunday. (Rule 6 at that time did not include Saturdays). The court specifically held that the statute of limitations under FELA was controlled by the provisions of Rule 6 of the Federal Rules of Civil Procedure.

█ The court also notes that plaintiff testified that although he was injured on March 19, 1968, he had no knowledge of his injury until March 20. Under FELA, a cause of action only accrues when the plaintiff has reason to know he is injured. The Supreme Court in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) stated that statutes of limitations only require the assertion of claims within a specified period after notice of invasion of legal rights. This has been interpreted by the Fourth Circuit Court of Appeals as follows:

> The Urie case unquestionably demonstrates the Court's view that when the nature of the injury is such that it does not manifest itself immediately, the determination of when the cause of action accrued does not depend on when the injury was inflicted. *To the contrary, the cause of action accrues only when the plaintiff has reason to know he has been injured.* (emphasis added) Young v. Clinchfield Railroad Co., 288 F.2d 499, 503 (4th Cir. 1961).

█ The court notes that until the plaintiff knew that he was injured, he was legally ignorant of the existence of his alleged cause of action. Therefore, it may be said that the cause of action accrued on March 20, 1968, when the plaintiff first discovered his injury.

█ The defendant seeks dismissal because the claim arose more than three years prior to the filing of the amended complaint. The amended complaint was filed on July 24, 1972 and the injury was discovered on March 20, 1968. The Supreme Court has held that where an amendment merely expands or amplifies the cause of action already asserted, it relates back to the commencement of the action and is not affected by the intervening lapse of time. Seaboard Air Line v. Renn., 241 U.S. 290, 36 S.Ct. 567, 60 L.Ed. 1006 (1916). This court notes that the amended complaint filed on July 24, 1972 merely expanded and amplified the original complaint of March 22, 1971 and therefore relates back to the commencement of the action.

█ The court notes that the FELA statute of limitations is not totally inflexible, but may be extended beyond three years. Burnett v. New York Central RR, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); Mumpower v. Southern Railway Company, 270 F.Supp.

**158**

318 (W.D.Va.1967). One of the well recognized exceptions which will toll the FELA statute of limitations is the doctrine of estoppel. Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). The general law is stated in 24 A.L.R.2d 1413, 1435:

> Actual fraud in the technical sense, bad faith, or an intent to mislead or deceive is not essential to create an estoppel against setting up the statute of limitations, it being sufficient for this purpose that the (defendant) made misrepresentations which misled the (plaintiff), who acted upon them in good faith, to the extent that he failed to commence action within the statutory period.

The facts appear in this case to indicate that the plaintiff was given assurances by three C&O doctors, Dr. Woodhouse, Dr. Edmonds and Dr. Vermilya that his injury was minor and that he could return to work. In addition, a claims agent advised the plaintiff in June 1968 that he had three years within which to file his action.

The court feels that there remain factual questions as to the representations made to the plaintiff and to the issue of negligence, all of which may be submitted to the jury at the time of trial.

Accordingly, for the above-stated reasons, it is hereby ordered and adjudged that defendant's motion to dismiss on the ground of statute of limitations is overruled and denied.

The court is of the opinion that this decision and order entered herein involve a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the decision and order may materially advance the ultimate determination of this litigation, pursuant to the provisions of Title 28, U.S.C. sec. 1292(b). An appeal is granted.