**Donald D. FLETCHER, Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY, a corporation, Appellee.**

No. 79–1472.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 7, 1979.

Decided May 7, 1980.

Rehearing and Rehearing En Banc Denied June 26, 1980.

John J. Higgins, Eisenstatt, Higgins, Kinnamon & Okun, Omaha, Neb., argued, for appellant.

Michael P. McReynolds, Legal Dept., Union Pac. R. Co., Omaha, Neb., argued, for appellee.

Before GIBSON, Chief Judge,* HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Donald Fletcher appeals the judgment of the district court [1] that his personal injury claim against Union Pacific Railroad Company (the Railroad), under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., was barred by the FELA three-year statute of limitations. For the reasons discussed below, we reverse in part and remand to the district court.

Fletcher was employed by the Railroad as a sectionhand doing heavy labor. On March 22, 1962, Fletcher shoveled crushed rock for approximately forty-five minutes, under instructions to work as fast as he could. When the job was finished, he started to lay a shovel on the bed of the truck. He felt a sharp pain in his lower back and had to catch the edge of the truck to keep from falling. The foreman had Fletcher taken to the Union Pacific Railroad Employees Health Association (UPREHA) [2] Dispensary (the Dispensary). There he was examined by a physician, his back was taped, and he was given some pain pills and instructed to return in a week, which he did. For the next two months, Fletcher reported to work but was unable to carry on the activities of a sectionhand and was instructed to keep time records. Thereafter he was permitted to return to work.

It is undisputed that, since the injury on March 21, 1962, Fletcher has had a chronic back problem and has received extensive hospitalization and treatment. However, there is complete disagreement between the parties over whether and in what circumstances Fletcher reported to the Dispensary from 1962 to 1966. He says that he went frequently and was told that nothing was wrong with his back. The Railroad says that he did not see any physicians at all until he returned to the Dispensary of his own accord in 1966.

In any event, on February 24, 1966, Fletcher was referred to an orthopedic sur-

---

* The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted and took senior status on December 31, 1979, before the opinion was filed.

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

2. UPREHA is a health care group formed by the Railroad employees. The Railroad sends employees who are sick or injured on the job to the Dispensary for medical treatment. The Dispensary is located in the Railroad's headquarters in Omaha, Nebraska, in office space that it leases from the Railroad. UPREHA also maintains a ward at St. Joseph Hospital and refers employees to outside specialists for treatment of problems within their medical specialities. As a condition of employment, each employee is required to sign an authorization granting the Railroad Claim Department access to all medical records.

geon at the UPREHA ward for lower back pain. This doctor admitted Fletcher to St. Joseph Hospital (the Hospital) and diagnosed "lumbar disc syndrome." Fletcher's symptoms were treated conservatively, that is, with traction, bed rest and pain medicine. Upon his discharge from the Hospital, Fletcher was assigned to the same heavy work as a sectionhand that he had been doing when he injured his back on March 21, 1962. This pattern was to continue for the next several years, with at least four hospital stays and diagnoses ranging from "atypical disc syndrome" to "dorsal lumbar arthritis."[3]

On June 18, 1973, Fletcher was readmitted to the Hospital by Dr. Bernard Kratochvil of the UPREHA ward who repeated a myelogram. The myelogram was within normal limits, and the diagnosis was "lumbar disc syndrome." However, for the first time, Fletcher was not released to work as a sectionhand. Dr. Kratochvil wrote a letter to the Railroad superintendent which said, "Because of his back condition I recommend Mr. Donald Fletcher be given less strenuous work." The letter, on UPREHA stationery, was dated July 11, 1973. Dr. Kratochvil's written recommendation was not followed by the Railroad. Fletcher was put back on as a sectionhand and remained on the job until he could not stand the pain any longer.

On December 7, 1973, Fletcher went on leave-of-absence status. He was then referred by the UPREHA district surgeon to a neurologist, who diagnosed "a chronic degenerative lumbar intervertebral disc or chronic lumbar strain."

In June 1974, the Railroad sent Fletcher to be evaluated for disability. Based solely on X-rays, these doctors decided that

Fletcher was physically sound and rejected him for disability or retirement. Their report was made in early July 1974.

Coincidentally, in July 1974, Dr. Kratochvil told Fletcher he needed a fusion operation[4] for his "unstable back." Dr. Kratochvil testified that Fletcher's pain was precipitated by movement and that the purpose of the fusion operation was to decrease movement in the back and thus decrease the pain.

On March 4, 1975, Fletcher notified the Railroad that he was making a claim for his back injury and the claims agent took his statement. On March 15, 1975, the Railroad claims agent requested that Dr. Kratochvil send him all of Fletcher's medical records. Dr. Kratochvil's March 19, 1975, letter to the claims agent stated:

Mr. Donald Fletcher has continued under outpatient treatment following his back surgery in July, 1974. He will not be able to return to work for another thirty days because of the fact that he has had a back fusion. I would not recommend that he continue to do any work that requires heavy bending and lifting.

In an April 16, 1975, letter to the claims agent, with a copy to the Roadmaster, Dr. Kratochvil wrote, "I will not be able to release him to return to his present job as sectionman. We would like to get him back to work as soon as another type of work is available." On July 23, 1975, Dr. Kratochvil wrote of Fletcher, "He is being released today for temporary work as a Crossing Watchman." Since that date, Fletcher has worked occasional Sundays as a flagman and receives a $25-per-day disability supplement for days he does not work.[5]

This suit was commenced on June 8, 1977. In a June 22, 1977, letter to the claims

---

3. On two occasions, Fletcher was also treated for depression as the pain got worse and more constant.

4. In a fusion operation the fourth and fifth lumbar vertebra are fused to the sacrum by means of a transverse fusion process in which a section of bone is removed from the hip and fused to the body of the vertebra.

5. On June 23, 1977, the Railroad estimated Fletcher's approximate wage loss from 1973 through 1977 as follows (ex. 16):

| | |
|---|---|
| 1973 – $ | 739.00 |
| 1974 – | 9,563.04 |
| 1975 – | 10,523.52 |
| 1976 – | 11,630.16 |
| 1977 – | 13,008.24 |

Total – $45,463.96

agent, Dr. Kratochvil said that "the lumbar strain was the result of years of heavy work." He set Fletcher's disability at 20%.

Fletcher brought this action pursuant to the FELA to recover for a work-connected back injury. After a bench trial, the court granted the Railroad's motion to dismiss on the ground that Fletcher's claim was time barred by the FELA three-year statute of limitations. The court assumed that Fletcher's cause of action accrued on March 21, 1962, and rejected Fletcher's contention that the Railroad was equitably estopped from asserting the statute of limitations. In so deciding, the court held: (1) the doctors who treated Fletcher were not agents of the Railroad, (2) their diagnoses of Fletcher's condition were neither misrepresentations nor misdiagnoses, and (3) Fletcher was not misled as to the nature of his injury or his ability to work. The court did not reach Fletcher's allegation that the Railroad negligently assigned him to work which was not within his physical capacity to perform with reasonable safety.

On appeal, Fletcher first contends that the court erred in holding that the Railroad was not estopped from asserting the statute of limitations. Fletcher claims that, because of the various and erroneous diagnoses of the UPREHA doctors, he was induced to delay taking appropriate legal action until after expiration of the statute. Therefore, by his analysis, the claim accrued only when he received the correct diagnosis and underwent surgery in 1974. The Railroad counters that, under the FELA, an employee's claim for a traumatic injury accrues at the time of the accident. The Railroad also denies that the doctors were its agents. Furthermore, the Railroad argues that, even if the statute were tolled by Fletcher's initial treatment at the Dispensary in 1962, the statute would have expired before Fletcher returned to UPREHA physicians in 1966.

■ The FELA provides that actions for injuries to employees must be brought "within three years from the day the cause of action accrued." 45 U.S.C. § 56. In cases involving traumatic injury, when the

symptoms are immediately manifested so that the employee is aware of the event causing the injury, the cause of action accrues upon the occurrence of the injury, regardless of whether the full extent of the disability is known at that time. *Brassard v. Boston & Main R. R.*, 240 F.2d 138 (1st Cir. 1957); *Deer v. New York Central Ry.*, 202 F.2d 625 (7th Cir. 1953); *Felix v. Burlington Northern, Inc.*, 355 F.Supp. 1107 (D.Minn.1973). By the same token, with industrial diseases, where the symptoms are not immediately manifested, the cause of action does not accrue until the employee is aware or should be aware of his condition. *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Young v. Clinchfield R. R.*, 288 F.2d 499 (4th Cir. 1961). However, even in cases of traumatic injury, the statute of limitations is not inflexible but may be extended beyond three years for equitable reasons. *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). A railroad is equitably estopped from asserting the statute of limitations as a defense if misrepresentations by either it or its agent caused the employee's failure to bring his action within the three-year period. *Fravel v. Pennsylvania R. R.*, 104 F.Supp. 84 (D.Md.1952) (fraud re diagnosis and legal rights). The railroad is equitably estopped even if the misrepresentations upon which the employee relied were unintentional. *Louisville & Nashville R. R. v. Disspain*, 275 F.2d 25 (6th Cir. 1960) (misdiagnosis); *Mumpower v. Southern Ry.*, 270 F.Supp. 318 (W.D.Va.1967) (misdiagnosis); *Tillery v. Southern Ry.*, 348 F.Supp. 9 (E.D.Tenn. 1971) (legal advice). But the railroad's misrepresentations will not estop it from asserting the statute of limitations where a substantial period of time supervened after expiration of the delay caused by the railroad. *Holifield v. Cities Service Tanker Corp.*, 421 F.Supp. 131 (E.D.La.1976) (delay even after surgery to correct the injury); 53 C.J.S. Limitations of Actions § 25. Likewise, a railroad is not estopped where employee did not in fact rely on its misrepresentation. *Holifield v. Cities Service Tanker Corp., supra*, 421 F.Supp. at 135.

Apart from the estoppel cases, the statute of limitations may be tolled by extenuating circumstances, especially where there is no prejudice to the railroad. *Burnett v. New York Central R. R.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (allowed to re-file in proper forum); *Billings v. Chicago, Rock Island & Pacific R. R.*, 581 F.2d 707 (8th Cir. 1978) (improper venue).

We agree with the district court that Fletcher's claim for the back injury is barred by the statute of limitations. Because it is not necessary to our conclusion, we do not reach the issue of whether the many doctors who treated Fletcher after 1962 were agents of the Railroad.[6] However, we note that the trend is toward finding agency in such cases and that the record before us does not include many of the determinative facts, such as: whether medical care is provided pursuant to a contract or statute; who pays the physicians or contributes to the fund for compensating the physicians; who administers the fund and how; who selects the physicians; who sets the standards for employment and disability physicals; whether injured employees are required to report to the company physician; what non-monetary advantages accrue to the railroad; and what is the custom and practice. *See* Annot., 16 A.L.R.2d 564 (1966).

■ There is no equitable estoppel here simply because there was no misrepresentation within three years of filing suit. Giving Fletcher the benefit of every doubt, we might assume that he received a misdiagnosis at the Dispensary in March of 1962, which kept him unaware of his condition. However, the back problem was definitely diagnosed no later than February of 1966. From then on, all the medical terms applied to Fletcher's back—from "lumbar disc syndrome" to "unstable back"—refer to chronic back strain. The 1974 surgery was not delayed by misdiagnosis, but was performed as soon as his degenerative condition had progressed to the point where surgery was indicated.

■ Moreover, Fletcher was not misled by the difference in medical terminology. His attorney conceded, "Mr. Fletcher has never claimed that he was told that nothing was wrong with his back or that a slumbering symptom suddenly erupted and disabled him." Brief of Appellant at 22. This admission also undermines Fletcher's alternative theory that his condition was analogous to an industrial disease. We agree in theory that a traumatic injury could produce latent symptoms such that tolling the statute of limitations until the employee knew he was injured would be appropriate. *See Paynter v. Chesapeake & Ohio Ry.*, 60 F.R.D. 153, 157 (W.D.Va.1973). However, the situation at bar does not present such a case. As soon as Fletcher became aware that something was wrong with his back,[7] his lack of reliance on the doctors' representations obviated equitable estoppel. Therefore, Fletcher's cause of action for his March 21, 1962, injury is barred by the statute of limitations.

Fletcher's second contention is that the Railroad is liable for negligently assigning him to work more strenuous than that for which he was reasonably suited. The Railroad argues that this cause of action accrued when he quit working in December 1973 and therefore is also barred by the statute of limitations. The threshold question is whether the statute had run on the negligent assignment claim.

■ The statute of limitations for the negligent assignment claim is distinguished from the claim for the original injury. Where injury results from a negligent act and the injury continues by reason of continued negligence, a recovery may be had

---

**6.** The Railroad conceded, in its brief as well as at oral argument, that the UPREHA doctors at the Dispensary were its agents at least as to the initial visit.

**7.** If his back bothered him constantly from March 21, 1962, his cause of action accrued on that date. Even if his cause of action had not accrued until February 1966, more than three years supervened after the delay allegedly caused by the Railroad.

for damages [8] caused by the continuing negligence although a cause of action based on the original negligent act is barred. 54 C.J.S. Limitations of Actions § 174a. Therefore, although the cause of action for the original injury was barred by limitations, the statute of limitations for the negligent assignment claim did not begin to run until its own time of accrual.

Where an injury is caused by continuing or repeated acts, the statute of limitations may not begin to run even when the tort is complete. *Stuebig v. Hammel*, 446 F.Supp. 31, 35 (M.D.Pa.1977); *Lathon v. Parish of Jefferson*, 358 F.Supp. 558, 559 (E.D.La. 1973); 4 Restatement of Torts 2d § 899c. The statute of limitations may be tolled until the tortious conduct ceases, on the theory that one should not be allowed to acquire a right to continue the tortious conduct. *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974), *vacated on other grounds*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396, *on remand*, 519 F.2d 59 (1975); *Harper v. Union Savings Ass'n*, 429 F.Supp. 1254, 1260 (N.D.Ohio 1977). An employee's right of action against his employer for personal injuries may be tolled until the last day the employee was subjected to the conditions causing the injury. *Simmons v. American Mutual Liability Ins. Co.*, 433 F.Supp. 747, 751 (S.D.Ala.1976), *aff'd without opinion*, 560 F.2d 1022 (5 Cir. 1977).

At least one court has applied these principles to a FELA claim for an injury which was not an occupational disease. In *Fowkes v. Pennsylvania R. R.*, 264 F.2d 397 (3d Cir. 1959), the plaintiff's use of a defective air hammer had the cumulative effect of causing joint damage and arthritis. That harmful working condition was treated as a continuing or frequently repeated wrong which tolled the running of the statute of limitations. The court refused to limit the claim to aggravation of the injury that had occurred within three years of when suit was filed. Instead, it reasoned that the master's failure to perform its duty was a single wrong, so that the statute did not begin to run on the injury until the master-servant relationship ended. *Id.* at 399.

Fletcher filed this lawsuit on June 8, 1977. The FELA has a three-year statute of limitations. If Fletcher is to recover for negligent assignment, the statute must have been tolled until June 8, 1974. *Fowkes v. Pennsylvania R. R.* stated the rule that the statute does not begin to run on the injury until the master-servant relationship ends. But we have been unable to locate a case with facts such as those at bar. In the typical case, regardless of when the tort was complete, the employee was still working under the harmful conditions within three years of filing suit; here Fletcher took leave-of-absence status more than three years before filing suit but never terminated the master-servant relationship. Although economic coercion is one rationale for tolling the statute as between master and servant, Fletcher's decision to forego compensation does not defeat his recovery. Rather, the salient factor is how long the Railroad persisted in its allegedly tortious conduct. There is sufficient evidence to convince us that, even after a physician had recommended otherwise and while Fletcher continued to seek a different assignment, the Railroad repeated its assignment of Fletcher as a sectionhand. In June of 1974, the Railroad sent Fletcher to a doctor to be evaluated for disability. The report, which was completed in July of 1974, found that Fletcher could be returned to work as a sectionhand. This fact alone brings Fletcher's filing within the statutory period. A further indication that Fletcher was still officially assigned as a sectionhand is that, on April 16, 1975, Dr. Kratochvil had to write to the Railroad, "I will not be able to release him to return to his *present* job as a sectionman." The Railroad's allegedly tortious conduct did not cease until it assigned Fletcher to lighter work. Therefore, the statute was tolled sometime after April 16, 1975. Fletcher's June 8, 1977, filing was timely as to the negligent assignment claim.

---

**8.** Some courts hold that, in order to toll the statute, the damages must be separate and distinct injuries. 54 C.J.S. Limitations of Actions § 174a.

The next question which arises is whether the assignment caused his present condition. The test of causation under the FELA is whether the railroad's negligence played any part, however small, in the injury which is the subject of the suit. *Dunn v. Conemaugh & Black Lick R. R.,* 267 F.2d 571, 575 (3d Cir. 1959), aff'g 162 F.Supp. 324 (W.D.Pa.1958); *Isgett v. Seaboard Coastline R. R.,* 332 F.Supp. 1127, 1143 (D.S.C. 1971). An employee's claim under the FELA does not depend on showing that the injury was caused by a particular negligent act, *Massimiani v. Monongahela Ry.,* 339 F.Supp. 832, 833 (W.D.Pa.1972), but may be caused by the cumulative effect of a series of incidents, *Fowkes v. Pennsylvania R. R., supra,* 264 F.2d at 399, or due to the employee's weakened condition, *Dunn v. Conemaugh & Black Lick R. R., supra,* 162 F.Supp. at 330. Recovery for the resulting injury may be had under the FELA. *Dunn v. Conemaugh & Black Lick R. R., supra,* 267 F.2d 571; *Nuttall v. Reading Co.,* 235 F.Supp. 546 (3d Cir. 1956).

All the evidence was consistent that Fletcher's back condition improved in response to rest and symptomatic treatment but flared up each time he was returned to work as a sectionhand. As Dr. Kratochvil succinctly put it in his letter to the Railroad claims agent, "The lumbar strain was the result of years of hard work." It is clear that the Railroad's returning Fletcher to work as a sectionhand played a part in causing his present condition.

The remaining issue is whether the Railroad's repeated assignment of Fletcher as a sectionhand was in fact negligent. A railroad has a duty to assign employees to work for which they are reasonably suited. A railroad breaches that duty if it negligently assigns an employee to perform work beyond his capacity. *Massimiani v. Monongahela Ry., supra,* 339 F.Supp. at 833; *Bascho v. Pennsylvania R. R.,* 3 N.J.Super. 86, 65 A.2d 613, 616 (1947). The railroad is negligent if it knew or should have known that its assignment exposed the employee to an unreasonable risk of harm. *Dunn v. Conemaugh & Black Lick R. R.,* 267 F.2d 571, 576 (3d Cir. 1959), aff'g 162 F.Supp. 324 (W.D.Pa.1968); *Gulf Colorado & Sante Fe Ry. v. Waterhouse,* 223 S.W.2d 654, 659 (Tex.Civ.App.1949). Whether the assignment was negligent is a question of fact. *Dunn v. Conemaugh & Black Lick R. R., supra,* 162 F.Supp. at 327. Generally, a railroad has no duty to ascertain whether an employee is physically fit for his job, but if it undertakes to give physical examinations, it is liable if it performs such undertaking negligently.[9] *Isgett v. Seaboard Coastline R. R., supra,* 332 F.Supp. at 1141; *McGuigan v. Southern Pacific Co.,* 129 Cal.App.2d 482, 277 P.2d 444, 452 (1954). Where a physician certifies the employee as fit to return to heavy labor, it is not the employee's burden to show malpractice by the examining physician,[10] rather it is sufficient to show that the railroad knew or should have known that the employee was unfit for the work because of his condition. *Dunn v. Conemaugh & Black Lick R. R., supra,* 267 F.2d at 576; *Mroz v. Dravo Corp.,* 293 F.Supp. 499, 504 (W.D.Pa. 1968) (fit-for-duty slip from hospital was not conclusive of plaintiff's fitness to work). The employee's knowledge of his physical condition does not absolve the railroad of its duty to protect the employee from further injury. *Massimiani v. Monongahela Ry., supra,* 339 F.Supp. at 833; *Mroz v. Dravo Corp., supra,* 293 F.Supp. at 504 (3d Cir. 1956) (employee called in sick but was refused permission). *But cf. McGuigan v. Southern Pacific Co., supra,* 277 P.2d at 454 (railroad liable if it knew that employee was ignorant of his condition); *George v. Hillman Transportation Co.,* 340 F.Supp. 296, 301 (W.D.Pa.1972) (claim barred when

---

**9.** This result is not harsh when one considers, first, that this doctor is almost certainly an agent of the employer and, second, that the employer undoubtedly has a hand in setting the standards for disability and employment physicals.

**10.** Most such cases find that the examining physician was an agent of the railroad. *E. g., Dunn v. Conemaugh & Black Lick R. R., supra,* 162 F.Supp. 324; *McGuigan v. Southern Pacific Co., supra,* 277 P.2d 444. However, such a finding is not essential.

employee aware of condition but didn't give notice to employer).

The district court did not reach the negligent assignment claim. It has not yet had an opportunity to apply the law on negligent assignment to the facts before us. Neither have the parties briefed the point. Because of our findings that Fletcher's filing was timely as to the negligent assignment claim and that Fletcher's assignment played a part in his current condition, we reverse in part and remand to the district court for proceedings consistent with this opinion.[11]

HENLEY, Circuit Judge, concurring in part, dissenting in part.

The result reached by the majority is acceptable except as it deals with the issue of negligent assignment.

Since the district court did not reach the negligent assignment claim and the parties did not brief the issue, it might have been preferable to have remanded that entire issue for initial findings and conclusions by the district court. However, a majority of this panel has found that there was an assignment to heavy labor continuing beyond June 8, 1974, the critical date for limitations purposes, and has remanded for determination of the question whether that assignment was negligent and, if so, for determination of the amount of damages. I accept the majority's finding of fact.

It seems to be conceded by all that appellant took leave of absence from heavy work as a sectionhand on December 7, 1973. Thus, we have a final date of injury no later than December 7, 1973 but perhaps a continuing technical assignment as a sectionhand after June 8, 1974.

In such circumstances the holding of the majority that there is a timely claim or tolling of the statute of limitations is troubling indeed.

It is elemental that for a statute of limitations to begin to run on a negligent act, some injury or damage must occur which will entitle the victim to maintain the cause of action. *Continental Grain Co. v. Fegles Const. Co.*, 480 F.2d 793, 797 (8th Cir. 1973) (Minn. law). By extension it seems to follow that occurrence of a mere negligent act without injury cannot constitute a continuing tort sufficient to toll the statute of limitations. *Garelick v. Goerlich's, Inc.*, 323 F.2d 854, 856 (6th Cir. 1963). *See also Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C. Cir. 1977).

It is one thing to say that a continuing or repetitive injury within the statutory period may bring forward earlier injuries or aggravations, *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974), *vacated on other grounds*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396, *on remand*, 519 F.2d 59 (1975); *Fowkes v. Pennsylvania R. R.*, 264 F.2d 397, 399 (3d Cir. 1959); it is quite another to say that a continuing tort extending into the statutory period but unaccompanied by injury within that period will bring forward pre-period injuries. Since I am not prepared to go that far, I respectfully dissent from so much of the opinion and result reached by the majority as would reverse or remand in part.

---

11. If the district court finds that the Railroad's repeated assignment of Fletcher to heavy labor became negligent at some point, then it will necessarily determine the damages award. Damages for negligent assignment may include loss of wages, actual and prospective medical

expenses, pain and suffering, and loss of future earning capacity. *Isgett v. Seaboard Coastline R. R., supra*, 332 F.Supp. at 1142–43; *Brown v. Pennsylvania R. R.*, 179 F.Supp. 858 (W.D.Pa.), *aff'd*, 282 F.2d 522 (3d Cir. 1960).