Charles H. **BANKS**, Plaintiff,

v.

**UNITED STATES LINES CO.,**
Defendant.

No. 6511.

United States District Court
E. D. Virginia,
Norfolk Division.
Nov. 21, 1968.

Stuart V. Carter, Norfolk, Va., for plaintiff.

Bernard G. Barrow, Norfolk, Va., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

Plaintiff, a seaman, filed this action on December 29, 1967, alleging that, on September 14, 1964, while employed aboard defendant's vessel, the SS PIONEER MOOR, he sustained injuries as a result of the unseaworthiness of the vessel. No allegation of negligence is asserted although plaintiff's counsel was invited to file same if desired.

After several preliminary hearings following the filing by defendant of a plea of statute of limitations, an amended complaint was filed in which it is alleged that the delay in bringing the action was due to the fact that the original injury appeared to be rather insignificant, and it was not until June 1967 that plaintiff's legs began to swell and the injury appeared to be serious. He first saw a doctor on August 16, 1967, and was thereafter hospitalized from September 18, 1967, until September 28, 1967. Plaintiff attempts to negative any inference of prejudice to the defendant.

Treating the limitations plea as an invocation of the plea of laches and/or limitations, we think that the action must be dismissed.

 Plaintiff concedes that any statutory period applicable to this case commenced on September 14, 1964, when the injury was sustained. This is not a case in which the injury failed to manifest itself for several years after the alleged unseaworthiness gave rise to the injury. In the latter situation the statutory period would not commence until the injury had been discovered. Young v. Clinchfield R.R. Co., 288 F.2d 499 (4 Cir., 1961). However, where knowledge exists upon the occurrence of the injury—as in this case— there is an immediate accrual of a cause of action even though the injured party may not know the extent of his disability. Young v. Clinchfield R.R. Co., supra; Brassard v. Boston and Maine R.R., 240 F.2d 138 (1 Cir., 1957); Deer v. New York Central R.R. Co., 202 F.2d 625 (7 Cir., 1953).

We turn to the question as to whether any right exists to maintain an action in behalf of an injured seaman predicated solely upon a claim of unseaworthiness and, if so, whether the three (3) year limitation period specified by the Federal Employers' Liability Act (incorporated by reference into the Jones Act) con-

stitutes a bar to such action. The issue is not free from doubt and has been before this court on several occasions.

In the leading case of McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958), the Supreme Court held that a state court could not apply its two-year statute of limitations to bar an unseaworthiness action that is joined with an action for negligence under the Jones Act. The trial court held that the actions were not barred. In a jury trial, special verdicts were returned finding (1) no negligence and (2) no unseaworthiness. The injured seaman took no appeal as to his claim under the Jones Act and limited the review to the unseaworthy aspects of the case. An intermediate Texas court found it unnecessary to consider the issue of unseaworthiness, holding that the action was barred under the two-year Texas statute of limitations pertaining to actions for personal injuries. The Texas Supreme Court refused an application for a writ of error. In reversing, the opinion of Chief Justice Warren limits the holding to prohibit the application of a state-imposed shorter period of limitations to an action for unseaworthiness where the claim is combined with an action under the Jones Act, where Congress has prescribed a longer period of limitation under the Jones Act.

In Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1068 (1927), the Supreme Court ruled that claims of negligence and unseaworthiness were but alternative grounds of recovery for a single cause of action, and that a judgment in an action for unseaworthiness was a complete bar to the seaman's subsequent action for the same injuries under the Jones Act.

The Chief Justice, in *McAllister*, supra, states that "a time limitation on the unseaworthiness claim effects in substance a similar limitation on the right of action under the Jones Act," and further, "As an essential corollary of that proposition, it [the state] may not qualify the seaman's Jones Act right by affixing a shorter limitation to his concurrent right of action for unseaworthiness."

The present case squarely raises the issue as to whether a seaman, already barred from prosecuting an action for negligence under the Jones Act, may maintain an action for personal injuries solely grounded upon unseaworthiness without regard to the three-year limitation period incorporated by reference into the Jones Act. We answer the question in the negative.

The dissent in *McAllister* points out that Congress has fixed no limitation upon the time within which an action for damages for unseaworthiness must be commenced and, therefore, concludes that the state statute of limitations is applicable. This dissenting opinion gave rise to a concurring opinion by Mr. Justice Brennan in which he takes issue with the dissent as to the application of a three-year limitation period for a claim of unseaworthiness where he says:

"Just as equity follows the law in applying, as a rough measure of limitations, the period which would bar a similar action at law, * * *. I think that the maritime cause of action for unseaworthiness could be measured by the analogous action at law for negligence under the Jones Act, 46 U.S.C. § 688. This reference seems especially appropriate since the seaman's remedy for unseaworthiness under the general maritime law and his remedy for negligence under the Jones Act are but two aspects of a single cause of action. Baltimore S.S. Co. v. Phillips, 274 U.S. 316 [47 S.Ct. 600, 71 L.Ed. 1069].

"It thus seems to me that the three-year limitation on the Jones Act remedy, 45 U.S.C. § 56, is the ready and logical source to draw upon for determining the period within which this federal right [unseaworthiness] may be enforced. This period should be applied in an action for unseaworthiness brought in a state court, just as it would be applied by the state courts

in actions brought under the Jones Act, Engel v. Davenport, [271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813] supra."

If the language of Mr. Justice Brennan is to be accepted, an action for personal injuries grounded solely upon unseaworthiness is time-barred after the expiration of the three-year period. We believe that such a ruling is consistent with the intent of Congress in enacting the Jones Act. Congress did not expressly fix a limitation period for the institution of Jones Act cases. This was accomplished by judicial decisions by reason of the Jones Act incorporating the provisions of the Federal Employers' Liability Act. Carriers by rail may have unsafe cars but they do not have unseaworthy cars. Certainly Congress could legally provide for a three-year limitation on an action for unseaworthiness, and it seems highly inconsistent to permit a longer period for unseaworthiness where negligence and unseaworthiness are merely two aspects of the same cause of action. We believe that judicial decisions have effectively incorporated the Jones Act period of limitation into an action for unseaworthiness under the general maritime law.

Support for this conclusion is reflected in the opinion of Circuit Judge Maris in Lipfird v. Mississippi Valley Barge Line Co., 310 F.2d 639 (3 Cir., 1962). While the language of Judge Maris was perhaps unnecessary to the final decision in *Lipfird*—and the same is true in the instant case—it adequately demonstrates his interpretation of *McAllister* where he states:

"It might be argued with much force that the rationale of the ruling of the Supreme Court in the McAllister case compels the conclusion that the three years limitation which applies to Jones Act negligence claims is directly applicable to bar reliance upon unseaworthiness as well as negligence in the single action for damages in which a seaman must assert both grounds if he intends to rely upon them. For in the McAllister case the Court held, as we have seen, that a

time limitation of two years on the claim of unseaworthiness, if enforced in such a single action, would have accomplished in substance a similar limitation on the claim of negligence made in the same action in spite of the longer limitation applicable by statute to the Jones Act negligence claim. It would appear to follow logically that the converse should be true and that the enforcement of the three years limitation imposed by statute on the claim of Jones Act negligence made in support of the single action would accomplish in substance a similar three years limitation on the claim of unseaworthiness also made in support of it even if application of the ordinary doctrine of laches might not then bar the claim. Such a result would seem to follow logically from the unitary nature of the seaman's action and would accord with the public policy against the prosecution of stale claims by railroad workers and seamen which was declared by Congress in enacting the three years limitation. 45 U.S.C.A. § 56."

There are, of course, a number of authorities which apply the doctrine of laches to a seaman's or longshoreman's claim for unseaworthiness, but apparently few that address themselves directly to the question as to whether the Jones Act limitation is also a bar to a seaman's claim for unseaworthiness.

■ It is quite true that, in the enforcement of a maritime claim, admiralty prefers the equity rule of laches as opposed to any rigid limitation, Giddens v. Isbrandtsen Co., 355 F.2d 125, 126 (4 Cir., 1966) and cases therein cited, but this is not to say that an absolute time-bar may not be imposed on a maritime claim. That is exactly what the Jones Act does in adopting the three-year limitation period proscribed by the Federal Employers' Liability Act, 45 U.S.C. section 56. *Giddens* extends the Jones Act limitation period to longshoremen even though the Jones Act is a statute designed to afford remedies for seamen only.

The Jones Act had its inception in 1920. Prior to its passage the right to recovery for personal injuries by a seaman against the vessel and her owner was limited to "an indemnity for injuries received by a seaman in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903). No cause of action for negligence of the shipowner then existed. After the Jones Act, it was thought that the plaintiff had to elect between the Jones Act and the unseaworthiness doctrine and could not go to the jury on both counts. Gilmore & Black, The Law of Admiralty, section 6–3, p. 251. The result was that unseaworthiness actions "fell off to a trickle." It was not until the mid-1940's that the unseaworthiness doctrine started to play a part in seamen's actions to recover damages for injuries and the requirement to elect was rendered obsolete. As Gilmore and Black stated:

> "It is safe to predict, unless the Supreme Court reverses its field a second time, that in another ten years the Jones Act will have become a faint and ghostly echo and the law of recovery for maritime injuries will be stated in terms of unseaworthiness alone. The law is always improved when one cause of action is made to grow where two grew before."

Experience has shown that, while allegations of Jones Act negligence are still generally incorporated into complaints filed by counsel for injured seamen, the vast majority of cases are governed by the doctrine of unseaworthiness.

While the Supreme Court has not squarely dealt with the issue herein discussed, other than what has been said in the *McAllister* case, we do not overlook Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455 (1944), where the seaman was injured in 1934 and the action under the Jones Act and on unseaworthiness was not instituted until 1940. The opinion merely notes that the Jones Act claim was dismissed as having been filed too late. By inference, however, it would appear that the action for unseaworthiness could be maintained after the Jones Act limitation period. Of course, *Mahnich* was decided fourteen years prior to *McAllister*.

We recognize that the warranty of seaworthiness is said to be a right under an implied contract. It is, therefore, argued that the contractual limitation period should be controlling. However, actions to recover for personal injuries, whether based upon negligence or unseaworthiness, have usually been assumed to come under the tort statute covering personal injury actions. Gilmore & Black, The Law of Admiralty, section 9–81, p. 633. Historically it has been noted that a breach of warranty is tortious in its origin. Strika v. Netherlands Ministry of Traffic, 185 F.2d 555, 558 (2 Cir., 1950), cert. den. 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343 (1950). The negligence and unseaworthiness claims sound basically in tort. Oroz v. American President Lines, Ltd., 259 F.2d 636, 639 (2 Cir., 1958), cert. den. 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959).

The instant action was filed on the civil side based upon diversity of citizenship and the amount in controversy. Under the merger of civil and admiralty rules, we feel that the law is looking to a unification of remedies as well as procedure. It would be wholly inconsistent with uniformity to hold that a plaintiff, seeking a recovery for one cause of action for which there are alternative grounds, is barred as to one approach but may proceed down the other avenue. We believe that *McAllister* has effectively invoked a three-year limitation as to a personal injury action predicated upon unseaworthiness. If and when this question again reaches the Supreme Court, logic dictates that this view should be upheld. This is not a situation of contravening the intent of Congress which imposed no specific limitation on Jones Act claims. To the contrary it is carrying out what Congress obviously intend-

ed when it referred to the Federal Employers' Liability Act which then had a two-year limitation period, later extended to three years.

As the views herein expressed are likely to be the subject of disagreement, we must consider the case from the standpoint of laches, using the three-year limitation period as a starting point for the purpose of determining whether the customary admiralty doctrine of laches defeats the claim. In so doing, the same result is achieved.

At the evidentiary hearing it developed that plaintiff was injured on September 11, 1964.[1] According to plaintiff, he reported for a fire drill on station number eight. He saw a black wash-down hose with the end "sticking out toward on the deck in front of the station" as he approached a door leading to the valve and fire hose. While attempting to open the door and standing on top of the hose, plaintiff heard air pressure. He reached down to catch the nozzle of the hose at the same time the pressure hit it, thereby causing the hose nozzle to hit plaintiff on the inside of the knee. According to plaintiff's conclusion, the valve to the station fire hose must have been left open. The initial symptoms of the injury were pain in the knee and swelling into the ankle. For ten to fifteen years before the accident plaintiff had a varicose vein condition, but insists that he had no trouble with his legs.

The medical log reveals that at a fire drill conducted at 1300 hours on September 11, 1964, a "Nozzle of fire hose struck Banks in the calf of left leg." While plaintiff visited the Public Health Service Hospital when the vessel arrived at Honolulu on September 18, 1964, he was determined to be fit for duty. The vessel thereafter went to Norfolk where plaintiff was again examined and declared fit for duty, following which it returned to the Far East and plaintiff was again seen at Hong Kong and again found to be fit for duty.

Efforts to locate three possible witnesses have not been fruitful.[2] As early as April 12, 1968, counsel were directed to ascertain, if possible, the whereabouts and recollection of the chief officer, two third mates and the oiler. The oiler, Ellis, was listed as living with his sister and brother-in-law on Long Island, but these relatives had not seen Ellis for approximately one year and did not know how to contact him. Later, counsel for plaintiff obtained a different street address for Ellis, and addressed a letter to this potential witness duly signed by counsel as "N.M.U. Counsel, Port of Hampton Roads." There has been no response to this letter. Counsel for plaintiff finally communicated by telephone with Perreault, a third mate, who stated that he remembered "absolutely nothing about the incident." Another third mate, Blisak, was contacted by defendant's counsel who was told that he recalled no such accident while aboard the vessel. None of the possible witnesses are employed by the defendant. The plaintiff remained aboard the PIONEER MOOR from the time of his injury until August 1967 when he reported to a doctor, although he has had periodic examinations every three to six months as to his varicose vein condition.

If we are to accept plaintiff's statement as to the cause of the injury on September 11, 1964, it assuredly makes out a case of unseaworthiness. This is now apparently the only testimony available. Therein lies the danger and prejudice occasioned by the lapse of time. There may have been witnesses who would have testified that the accident occurred in a different manner. For example, plaintiff may have opened the valve and dropped the hose, thus inflicting the injury. Applying the analogy of the Jones Act limitation (three

---

1. The complaint alleged the date of the injury to be September 14, 1964, but this is of no consequence.

2. Counsel for plaintiff concedes by letter dated October 30, 1968, that the Court has granted generous extensions of time to obtain the evidence.

years), or the Virginia State statute (two years), there exists in law a clear presumption of prejudice springing from the delay in instituting the action. While the ultimate burden of showing prejudice may rest upon the shipowner, there is no evidence to overcome the presumption and the doctrine of laches is applicable. Nor do we believe that the failure to bring the action at an earlier date by reason of the apparent lack of seriousness of the injury is sufficient to excuse the plaintiff. He was constantly being examined by doctors for a varicose vein condition and, at all times, had full knowledge of the fact that he had sustained a traumatic injury to his knee in September 1964. At no prior time has he ever made a claim against the defendant. Under the principles applicable to the laches doctrine, the case must fail. Giddens v. Isbrandtsen Co., supra; Kane v. Union of Soviet Socialist Republics, 189 F.2d 303 (3 Cir., 1951).

A judgment order will be entered upon presentation.