Ricky Lee HOLIFIELD

v.

CITIES SERVICE TANKER CORP.
et al.

Civ. A. No. 74–3031.

United States District Court,
E. D. Louisiana.

Oct. 20, 1976.

Darryl J. Tschirn, Metairie, La., for plaintiff.

J. Dwight LeBlanc, Jr., New Orleans, La., for defendants.

## MEMORANDUM OPINION AND ORDER

BOYLE, District Judge:

The plaintiff Ricky Lee Holifield injured his back in July of 1967 while working as a pantryman aboard the S/S FORT HOSKINS.[1] On September 17, 1969 W. W. Holifield filed suit in another section of this court on behalf of his minor son, Ricky Lee (20 years old), seeking to recover damages for the 1967 injury from Cities Service Tanker Corporation as the employer and shipowner. *See Holifield v. Cities Service Tanker Corp.*, C.A. # 69–2058F (E.D.La.). That matter was settled by an agreement executed between the parties on May 4, 1970 and signed by both Ricky Lee and W. W. Holifield.[2] In consideration for the sum of $19,750, the latter agreed to release all claims against Cities Service or the vessel arising out of any injury sustained by Ricky Lee Holifield aboard the S/S FORT HOSKINS in July of 1967 or at any other time. Judge Lansing L. Mitchell dismissed the action without prejudice to either party's right to revive it within 60 days if settlement were not consummated; but the suit was not reopened.

In January of 1972 the plaintiff underwent surgery for a disc removal and spinal fusion, which he claims was a consequence of the 1967 injury and the culmination of a back condition which had continually deteriorated since that time. He brought this action on November 7, 1974 against Cities Service Tanker Corporation "and/or" International Ocean Transportation, alleging both negligence under the Jones Act and unseaworthiness as grounds for recovery of $900,000 in damages for his back injury.

The defendants have moved to dismiss and/or for summary judgment on the

1. The complaint alleges that the injury was sustained in or about July of 1968; but in a subsequent deposition Holifield testified that the pleading was in error and that he was injured in 1967. See Plaintiff's Dep. at 3–4 [Rec.Doc. # 15].

2. The evidence does not indicate that this settlement agreement was submitted to the court for approval, and we assume that this was not done.

grounds that the Jones Act cause of action is barred by prescription and the claim under General Maritime Law is barred by the doctrine of laches. The motion was argued on September 24, 1975, but we reserved ruling and continued the matter without date in order to permit further discovery on the question whether the defendants are estopped under equitable principles from raising the defense of prescription herein. The parties now having been allowed this opportunity and having submitted additional memoranda regarding the motion, we are prepared to rule.

■ Proceeding first to the claim of prescription, it is well settled that actions under the Jones Act are governed by the three-year limitation period set forth in the Federal Employees Liability Act (FELA). *See Engel v. Davenport*, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813 (1926). Accordingly, in order to maintain the instant suit, the plaintiff must have commenced it "within three years from the day the cause of action accrued." 45 U.S.C. § 56. Moreover, although it is Holifield's contention that he did not understand the full extent of his injury until the surgery which occurred in 1972, we regard the accrual date of his injury for prescription purposes as the date of his original injury, i. e., 1967. This comports with the weight of jurisprudential authority arising out of FELA cases wherein the fact of the plaintiff's injury is known at the time it is sustained, even though the full extent or seriousness of the injury may not be realized until a later time. *See Young v. Clinchfield Railroad Co.*, 288 F.2d 499 (4 Cir. 1961); *Brassard v. Boston & Maine Railroad*, 240 F.2d 138 (1 Cir. 1957); *Deer v. N. Y. Central R. Co.*, 202 F.2d 625 (7 Cir. 1953); *Felix v. Burlington Northern Inc.*, 355 F.Supp. 1107 (D.Minn.1973).[3]

The limitation period of three years having begun running with the accrual of the plaintiff's cause of action in July of 1967, it is clear that, without mitigating circumstances, the filing of the Jones Act claim *sub judice* in November of 1974 is time-barred. It is the plaintiff's contention, however, that he was not fully apprised of the gravity of his injury *via* legal and/or medical advice when the release of claims in the earlier litigation was executed in May of 1970. Thus, he argues, equitable principles operate in these circumstances either to have suspended the running of the prescriptive period or else to estop these defendants from raising the defense of prescription in this proceeding.

The landmark decision with regard to suspension in cases such as this was rendered by the Supreme Court in *Burnett v. New York Central R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). There a state action brought under FELA was dismissed for improper venue too late for the plaintiff to institute a federal claim within the statutory three-year period. In these circumstances, the Court held that the state filing had tolled the running of the period until the state court dismissal had been finalized by the expiration of the time for appeal or by the entry of a judgment on appeal. But the reasoning of the Court was given implications beyond the narrow scope of its holding, and signalled an approach to statutory limitation periods which the plaintiff seeks to have applied herein. Legislatively-directed limitations of actions, wrote Justice Goldberg, serve a policy of "repose" and of essential fairness to the defendants which is "frequently outweighed . . . where the interests of justice require vindication of the plaintiff's rights." 85 S.Ct. at 1055. Thus, the basic inquiry becomes whether the legislative policy underlying

**3.** The Supreme Court has held that, where the injury to the plaintiff was the harmful inhalation of silica dust, a FELA cause of action did not accrue until the accumulated effects of the inhalation had manifest themselves. *See Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). This principle has been adopted by the Fifth Circuit in cases involving occupational diseases which became known to

their victim only after having been contracted. *See Aerojet-General Shipyards, Inc. v. O'Keeffe*, 413 F.2d 793, 795 (5 Cir. 1969). The facts herein clearly are distinguishable, however; and the *Urie* rule of delayed accrual should be limited to situations in which a plaintiff has no notice of the fact of his injury when that injury occurs. *See Brassard v. Boston & Maine Railroad*, supra, at 141.

the substantive action would be effectuated by enforcing or suspending the rule of prescription; and, in FELA cases, that inquiry focuses upon the purposes of a "humane and remedial Act." *Id.* at 1054.

In the case at bar the question is not merely whether the running of the three-year period was suspended, but rather—if so—then for how long. If it is the plaintiff's position that the original action filed by his father in September of 1969 tolled prescription on his Jones Act claim inasmuch as misrepresentations made to him in the context of that litigation led to an invalid release of the claim, then it still must be recognized that two years and two months already had passed since his injury by the time of the first action's filing. Furthermore, in *Burnett* itself, the period was not tolled indefinitely, but only for as long as the state suit remained viable. Even closer to the allegations herein, it is generally held that where a plaintiff is defrauded in such a way as to prevent the timely bringing of an action, the statutory bar of prescription "does not begin to run *until the fraud is discovered* . . . ." *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (emphasis added). Indeed, in the very instance of the FELA three-year period being suspended by an employer's fraudulent misrepresentation, the running of the period has been considered to recommence once the effects of the earlier misrepresentation are removed through the plaintiff's seeking independent advice. *See Tillery v. Southern Rwy. Co.,* 348 F.Supp. 9 (E.D.Tenn.1971). Thus, even assuming Ricky Lee Holifield had been misled at some earlier time regarding the nature of his back injury, he necessarily appreciated the true seriousness of his condition when he underwent surgery in 1972. Having then become disabused of any misrepresentation, he could no longer be heard to interpose it as the cause for delay in the filing of this suit. Since the instant action was not filed until November of 1974, two years and eleven months after the operation, this amounts to a total of over four years during which the plaintiff's Jones Act claim was in a state of "repose"

without there possibly existing the excuse of fraud or misrepresentation. In these circumstances, it cannot be truthfully said here, as it was in *Burnett,* that the barred plaintiff actively pursued judicial relief and "did not sleep on his rights. . . ." The equitable tolling precept of that decision is of no avail.

There are situations, on the other hand, in which a defendant's own involvement in the fraud or misrepresentation that leads to a plaintiff's being time-barred will estop it from raising the defense of prescription. This principle was enunciated by the Supreme Court in a FELA case, and was grounded on the aphorism of equity that "no man may take advantage of his own wrong." *See Glus v. Brooklyn Eastern Distr. Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). Based on such precedent, the principle continues to find application in FELA actions wherein the defendant-employer or its agent (i. e., a physician acting on the employer's behalf) have misinformed a plaintiff-employee as to the nature or extent of his injury, thereby inducing the failure to bring suit within the three-year period. *See Louisville & Nashville R. Co. v. Disspain,* 275 F.2d 25 (6 Cir. 1960); *Paynter v. Chesapeke & Ohio Rwy.,* 60 F.R.D. 153 (W.D.Va.1973); *Mumpower v. So. Rwy. Co.,* 270 F.Supp. 318 (W.D.Va. 1967).

It is clear in such cases that the misrepresentation by the defendant or its agent need not be fraudulent or intentional, provided it misleads the plaintiff, relying thereon in good faith, to the extent he fails to bring suit within the statutory period. *See Mumpower v. So. Rwy. Co.,* supra. At the same time, the plaintiff must demonstrate that he actually was misled; and, in light of the fact that the defendant is moving for summary judgment on the issue of prescription and has established a *prima facie* case, it is incumbent upon the plaintiff to present material facts which, if true, would estop the assertion of the statute of limitations as a matter of law. *See Burke v. Gateway Clipper, Inc.,* 441 F.2d 946, 948–49 (3 Cir. 1971).

The 1970 release agreement, signed by both the plaintiff and his father, as well as an affidavit accompanying the agreement and also signed and attested to by these parties, acknowledge that Ricky Lee Holifield's injury and/or disability "may be or grow worse than they seem to be now." *See* Copies of Release/Affid., attached to Defendants' Motion [Rec. Doc. # 23]. In the same affidavit both father and son declare that they "have carefully read . . . the foregoing Receipt and Release . . . in its entirety, and that they understand the contents thereof, in full and without reservation. . . . " *Id.* Additionally made part of the record are the affidavits of counsel for both plaintiffs and defendants in the earlier litigation.[4] The attorney representing the Holifields in that case states that "to the best of his knowledge" neither Ricky Lee's physical condition nor the meaning of the settlement were misrepresented, and, further, that he "feels certain" he followed his usual procedure and explained to Ricky Lee and his father that all claims were being released regardless of whether the former's physical condition worsened. *See* Affidavit of Stanley J. Jacobs, attached to Defendants' Supp. Memo. [Rec.Doc. # 31]. Defendants' counsel in the earlier proceeding similarly declares that neither he nor opposing counsel misled the Holifields as to what they were executing or as to what Ricky Lee's physical condition was and later might be, and that he specifically recalls an explanation being given to these parties that they were giving up all claims regardless of whether the back condition worsened. *See* Affidavit of Gerard T. Gelpi, *id.*

In opposition to such evidence, the plaintiff submits his deposition testimony of May 1, 1975 and his affidavit of September 23, 1975. Therein he contends that the 1970 release agreement which he and his father signed was read to him and that he did not read it himself, and, further, that he neither understood the agreement nor was it explained to him. *See* Plaintiff's Dep. at 7–9 [Rec.Doc. # 15]; Plaintiff's Affidavit [Rec. Doc. # 27]. The affidavit also recites that at the time he signed the release documents, the plaintiff's true medical condition was unknown to him.

 On the basis of this record, we find that the plaintiff has failed to establish such misrepresentation by the defendant as would estop it as a matter of law from raising the defense of prescription to the Jones Act claim. There is nothing in either the affidavit or deposition cited in opposition to the motion which indicates that actual misinformation as to his physical condition or legal rights was at any time given the plaintiff by the defendant herein or its agents. What is indicated is that Ricky Lee Holifield neither read nor understood the 1970 release documents, which contain, *inter alia*, the statement recognizing that the back injury may become worse. Whether the plaintiff actually failed to appreciate the possibility of a worsening condition, and whether such failure was induced by the conduct of the defendant or its agents, are entirely distinct matters. Furthermore, from the standpoint of the policy and requirements of Rule 56 of the Federal Rules, we decline to allow the plaintiff to raise an issue of fact by contradicting his own sworn statement of an earlier date; it is only *genuine* issues of fact and not simply issues created by the self-contradictions of an opposing party that are intended to preclude resort to the device of summary judgment. *See Radobenko v. Automated Equipment Corporation,* 520 F.2d 540, 543–44 (9 Cir. 1975). Given the circumstances evident in this case, the defendant clearly is entitled

---

4. Counsel in the instant proceeding are not the same as were involved in the earlier case. Ricky Lee and W. W. Holifield formerly were represented by Stanley J. Jacobs, Esq., but Ricky Lee is now represented by Darryl J. Tschirn, Esq. Counsel for the defendant Cities Service Tankers Corporation and the S/S FORT HOSKINS in the first case was Gerard T. Gelpi, Esq., who initially represented the defendants in this proceeding as well. But Mr. Gelpi has withdrawn as counsel of record herein and J. Dwight LeBlanc, Jr., Esq., has been substituted as the attorney for the defendants Cities Service and/or International Ocean Transportation. *See* Motion/Order to Substitute Trial Counsel [Rec.Doc. # 16].

as a matter of law to assert its defense of prescription.[5]

The defendant contends that the plaintiff's second cause of action, for unseaworthiness, is precluded by laches. The latter is an equitable doctrine applied within the court's discretion, and will bar an action where there has been inexcusable delay by the plaintiff in filing which results in prejudice to the defendant. *See Gardner v. Panama R. Co.*, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951).

The period of delay triggering operation of the doctrine in personal injury actions under General Maritime Law must be measured according to the analogous statute of limitations, in this case the three-year period of the Jones Act. *See Watz v. Zapata Off-Shore Company*, 431 F.2d 100, 111 (5 Cir. 1970); *Flowers v. Savannah Machine & Foundry Co.*, 310 F.2d 135, 137–39 (5 Cir. 1962); *Francis v. Pan American Trinidad Oil Co.*, 392 F.Supp. 1252, 1256 (D.Del.1975) and cases cited therein. This is not necessarily to say prescription of the plaintiff's Jones Act cause of action automatically precludes his claim of unseaworthiness *via* laches. *But see Banks v. United States Lines Co.*, 293 F.Supp. 62 (E.D.Va.1968). However, once it is found the applicable period of prescription has run, there arises a presumption of laches, and the burden shifts to the plaintiff to show that his delay was excusable and that the defendant was not prejudiced thereby. *See Watz v. Zapata Off-Shore Company*, supra, at 111; *Muller v. Lykes Bros. Steamship Co.*, 337 F.Supp. 700, 702 (E.D.La.1972) and cases cited therein.

We do not hesitate in concluding that the plaintiff Holifield has failed to establish a reasonable excuse for his delay of seven years and four months in bringing the instant action. As already observed, he allowed his claim to lay dormant for over four years without any taint of the defendant's alleged misrepresentation or his own misunderstanding concerning the injury.

Nor has it been demonstrated that a lapse of more than seven years would not be prejudicial to the attempts of the shipowner to defend the unseaworthiness cause of action.

For the foregoing reasons, the motion of the defendant dismissing the plaintiff's action on the grounds of prescription/laches should be, and it is hereby, GRANTED. Judgment therefore shall be entered in favor of the defendant dismissing the plaintiff's action, with costs.

Jones Act employer of the plaintiff at the time of his injury.

---

**5.** This holding obviates the necessity of addressing the movant's additional argument that International Ocean Transportation was not a