Donald D. **FLETCHER**, Plaintiff,

v.

**UNION PACIFIC RAILROAD COMPANY**, Defendant.

No. CIV. 77–0–178.

United States District Court, D. Nebraska.

March 15, 1979.

62

John J. Higgins, Omaha, Neb., for plaintiff.

F. Jerome Given, Omaha, Neb., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This action was commenced, and the jurisdiction of this Court properly invoked, under the provisions of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.* Plaintiff Donald Fletcher, an employee of the defendant Union Pacific Railroad Company (U.P.), alleges that he sustained a compensable work-related back injury in 1962 while shoveling crushed rock in the course of repairing a section of railroad track in Omaha, Nebraska. Plaintiff further alleges that the condition of his back steadily worsened over the ensuing years until finally, in July, 1974, he underwent surgery and a spinal fusion was performed. This suit was thereafter filed in June of 1977.

The case was tried to this Court sitting without a jury. At the close of the plaintiff's case, U.P. moved to dismiss, claiming that the action was time-barred under FELA's three-year statutory limitation period. The defendant did not thereafter present any evidence and the cause was thus submitted. For the reasons stated herein, the Court will enter a separate order granting defendant's motion to dismiss.

 Damage actions under FELA must be commenced "within three years from the day the cause of action accrued." 45 U.S.C. § 56. It is well settled that where the source of injury is traumatic, the plaintiff's cause of action accrues under this section on the day the injury is sustained even though the full extent or seriousness of the injury is not ascertained until a later date. *DeHerrera v. Union Pacific Railroad,* No. 78–1563, Slip Op. at 5–6 (10th Cir. Dec. 14, 1978); *Holifield v. Cities Service Tanker Corp.,* 421 F.Supp. 131, 134 (E.D.La.1976), aff'd 552 F.2d 367 (5th Cir. 1977); *Felix v. Burlington Northern, Inc.,* 355 F.Supp. 1107, 1109 (D.Minn.1973); *Deer v. New York Cent. R. Co.,* 202 F.2d 625 (7th Cir. 1953).[1] Such is the case here. Mr. Fletcher testified that as he was finishing his shoveling activity something in his back suddenly "popped," causing instant and severe pain. He was at that moment fully aware of the fact of injury. The Court thus concludes that plaintiff's cause of action accrued on March 21, 1962, the date his injury was sustained. This, of course, is some fifteen years before suit was brought.

---

1. A distinction is drawn in FELA cases between traumatic injuries and industrial diseases. An exception to the usual accrual date is recognized where the nature of the injurious event is such that its symptomatic impacts are not immediately manifest. *See Urie v. Thompson,* 337 U.S. 163, 169–70, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (silicosis contracted through long-term inhalation of silica dust); *Young v. Clinchfield Railroad Co.,* 288 F.2d 499, 502–03 (4th Cir. 1961) (same).

For practical purposes, the plaintiff does not dispute the above conclusion and has shown the Court no authority supporting an argument that a different accrual standard is applicable to FELA cases than is generally applicable to other tort actions for personal injuries. Instead, the assertion is made that the defendant is equitably estopped from invoking the statute of limitations as a bar to this action and this is the issue before this Court.

■ In this connection, it is well established that an employer may not avail himself of the statute of limitations if his own wrong, or that of his agent, has prevented the plaintiff from filing his claim within the limitations period. For instance, if the employer, or a physician acting on behalf of the employer, misrepresents to the employee the true nature and extent of his injury and thereby induces the employee to forego his cause of action, the employer may not thereafter rely on the statute as a defense to the employee's untimely claim. Moreover, the misrepresentation need not be intentional or fraudulent, so long as it is relied upon in good faith by the employee and in fact misleads him in respect to his awareness that a cause of action exists. *Holifield v. Cities Service Tanker Corp., supra,* 421 F.Supp. at 135; *Mumpower v. Southern Railway Co.,* 270 F.Supp. 318, 319 (W.D.Va.1967). In support of his contention that U.P. is thereby estopped from relying on the statute of limitations in this case, plaintiff relies on the following course of events.

The evidence shows and the Court finds that immediately after he injured his back, Fletcher was taken to the Union Pacific Railroad Employees' Hospital Association dispensary (UPREHA). The UPREHA is an association of U.P. employees which provides a variety of medical services for its employee members. Though the staff, management and control of the UPREHA are wholly independent of U.P. management, a medical dispensary is operated on U.P. premises. Fletcher was treated at this dispensary and released the same day. Because of pain associated with his injury, Fletcher was unable to return to his normal work duties for approximately two months. During the next several years, Fletcher's back gave him occasional, and sometimes serious, difficulty in performing his duties as a section hand, which duties include a substantial amount of heavy labor.

In February of 1966, responding to complaints of back pain, Fletcher was referred by the UPREHA to the office of Gross, Iwersen, Kratochvil and Klein, orthopedic surgeons. This office has treated Fletcher since that time. Plaintiff's hospital records, which were introduced in evidence, reflect that between February of 1966 and July of 1973, Fletcher was admitted to the hospital on at least five different occasions, each time complaining of back pain. Tests were administered and diagnoses rendered. At various times during this period, Fletcher was diagnosed, at least tentatively, as suffering from chronic back sprain, lumbar disc syndrome, sciatic neuritis, dorsal lumbar arthritis, and functional psychoneurosis. Treatment for his condition included medication, exercise programs, and traction therapy, both in the hospital and on an out-patient basis. These treatments met with varying degrees of success, but each time Fletcher's return to work resulted ultimately in a recurrence of pain. Fletcher also sought the help of chiropractors and others. He gave up working in December of 1973 and took a leave of absence because he felt he was unable to continue. Finally, in July of 1974, under the care of Doctor Bernard Kratochvil, Fletcher was diagnosed as having an unstable back and a spinal fusion was performed.

Plaintiff claims that it was not until the spinal fusion was performed that a definitive medical basis could be discerned for his continuing back problems. The earlier "misdiagnoses" of plaintiff's condition, it is argued, served to conceal from Fletcher the true extent and precise nature of his injuries and misled him into a belief that no reason existed which would prevent him from continuing his job as a section hand. Finally, plaintiff contends that because of these misdiagnoses U.P. should not now be

allowed to rely on the statute of limitations to bar Fletcher's claim.

The Court has serious doubts that the doctrine of equitable estoppel has any application whatever to the facts of this case. As noted above, an estoppel is made out only when the plaintiff has demonstrated that (1) the employer or his agent (2) misinformed the plaintiff, and (3) thereby misled the plaintiff in respect to his cause of action. In this case the doctors who treated Fletcher were not employees or agents of U.P., but members of an independent firm of physicians to which Fletcher was referred by the employees' hospital association. Moreover, on the evidence presented, this Court is unable to conclude that any of the various diagnoses of Fletcher's condition were medically inaccurate when made, though surgery was not indicated until 1974. Finally, and most importantly, Fletcher was not misled. He was well aware that he had a back injury which seriously impaired his ability to perform his job. Fletcher related this fact to his doctors and sought their assistance in receiving less strenuous work duties. By deposition, Doctor Kratochvil testified to the following conversation between himself and Fletcher which transpired in July of 1973:

> *Dr. Kratochvil*: Why don't you get a different job?
>
> *Fletcher*: I was hired for this job, and this is the job I have the rest of my life.
>
> *Dr. Kratochvil*: There must be something else you can do on the section besides this.
>
> *Fletcher*: Yeah. There is a flagging job that I could do.
>
> *Dr. Kratochvil*: What do you want me to write?
>
> *Fletcher*: Just tell them that I can't do that heavy work.

By letter dated July 11, 1973, Doctor Kratochvil wrote to W. A. Ridge, superintendent of the Nebraska Division of U.P., stating: "Dear Mr. Ridge: Regarding Donald D. Fletcher. Because of his back condition, I recommend Mr. Donald Fletcher be given less strenuous work."

Following his consultation with Doctor Kratochvil, Fletcher returned to his job as a section hand and continued working until December 7, 1973, when, due to recurring back pain, he took an extended leave of absence. In February of 1974, Fletcher consulted Doctor Daniel McKinney, a neurologist. Doctor McKinney, noting Fletcher's 1962 injury and subsequent history, diagnosed Fletcher as "probably suffering from a chronic degenerative intervertebral disc or chronic lumbar strain."

Under the facts thus developed at trial, the Court must grant defendant's motion to dismiss. This is clearly not a case in which a company doctor tells an injured workman that nothing is wrong, and then, years later, a slumbering symptom suddenly erupts and disables the plaintiff. On the contrary, Fletcher knew he was injured from the outset. He knew the injury impaired his ability to work. Fletcher's doctors confirmed that knowledge at least as early as July of 1973, and again in February of 1974, more than three years before this suit was filed. Under these circumstances, the Court can find no basis for holding that the provisions of the statute of limitations were tolled, or that U.P. should, in equity, be estopped from relying thereon. Accordingly, the Court will enter a separate order granting defendant's motion to dismiss.